Argued May 7, reversed June 29, 1915.

## MURRAY *v*. LA GRANDE.

(149 Pac. 1019.)

**Municipal Corporations—Local Betterment Assessments—Compliance With Charter.**

1. The imposition of a tax upon property by a municipality for a local improvement is a hostile proceeding, and before realty can be charged therewith the municipality must have complied with the provisions of its charter as to jurisdiction.

[As to purposes for which a municipality may levy assessments and taxes, see note in 16 Am. St. Rep. 365.

**Municipal Corporations—Local Betterment Assessments—Alternative Procedure.**

2. The legislative power may provide one or more methods, concurrent or successive in operation, for the imposition of local benefit assessments to cover the cost of improvements in the future or already made, either of which methods the city may pursue.

**Municipal Corporations—Local Betterment Assessments—Second Assessment—Legislative Power.**

3. Although a local benefit assessment under existing laws may have been invalid for want of jurisdiction, the legislature, by subsequent enactment, may provide a new and independent procedure, ignoring even the question of jurisdiction under the former invalid assessment, to levy a tax, or provide for the same, to cover the cost of an actual improvement.

**Municipal Corporations—Local Betterment Assessment—Failure to Give Jurisdictional Notice—Reassessment—Validity.**

4. Where the charter of defendant city provided that, if any local betterment assessment was set aside by any court, the council might cause a new one to be made in like manner for the collection of the amount assessed, and where a street improvement assess-

ment was invalid, because the notice thereof to property owners, made a jurisdictional prerequisite by the charter, was defective, no subsequent reassessment of the cost of the improvement under the provision of the charter was valid, since the giving of notice in the terms described by the charter, the organic law under which the municipality operated, was a condition precedent to the city's securing jurisdiction to make an improvement, and to cure the invalidity in the proceedings it was necessary that they be had *de novo*, with valid notice, etc., to give jurisdiction.

From Union: JOHN W. KNOWLES, Judge.

In Banc.    Statement by MR. JUSTICE BURNETT.

This is a suit by Jennie Murray, B. F. Webb, Francis J. Crawford, John C. McEwen, Charles Floberg, Oscar Thompson, Louis Strom, F. B. Tufverson and the La Grande Real Estate Association, a private corporation, against the City of La Grande, in Union County, Oregon, M. K. Hall, Mayor of said city, Lee Warnick, Recorder of said city, J. H. McLachlen, Chief of Police of said city, and the Common Council of said city, to permanently enjoin the collection of an assessment to cover the expense of making certain street improvements in the City of La Grande. The charter of that municipality treating of the manner in which such exactions shall be made and collected requires a preliminary report from three commissioners, to be appointed from the personnel of the city council, concerning the property involved and the benefits to be derived from the proposed improvement. This provision then appears in that instrument:

"After receiving said report the council shall, before the levy of any special assessment for any improvement give personal notice for ten days, or in the absence of any property owner, agent or person in charge of said property, by publication in a daily newspaper in said city for a period of ten days to either the owner, agent or person in charge of said property against which said assessment is to be made,

of its intention to levy said special assessments, naming the purposes for which special assessments are to be levied, a description of the improvements so proposed, the boundaries of the district to be affected or benefited by such improvement, the estimated cost of such improvements and designate a time when the council will meet and consider the proposed levy and the granting to any person feeling aggrieved, a hearing, before said council. After a compliance with this subdivision, the council shall be deemed to have acquired jurisdiction to order the making of such improvements.''

After prescribing certain details about the manner of making the assessment, this clause follows:

''If any assessment is set aside by order of any court, the council may cause a new one to be made in like manner for the same purpose, for the collection of the amount so assessed.''

After narrating the filing of the commissioners' report, it is charged in the complaint, and admitted by the defendants:

''That the report of said commissioners did not define or describe the boundaries of said assessment district, nor did the common council of the City of La Grande define or describe, by resolution or otherwise, the boundaries of the district to be benefited specially, or at all, by such improvements, at that time or at any other time at all; that upon receiving the report of said commission the council of said City of La Grande attempted to give personal notice for ten days to the owner or person in charge of the several lots and tracts of land claimed to be specially benefited or assessed for such improvement, and to absent owners by publication for ten days in the 'Evening Observer,' a daily newspaper published in said city; but that such notices so given or pretended to be given did not name the purpose for which said proposed special assessment was to be made, or a description of

the improvements proposed, or the boundaries of the district to be affected or benefited by such improvements, or the estimated cost of such improvements.''

Based upon such a notice, the defects of which are conceded, the council proceeded to actually lay down a pavement of macadam on the street .designated under a contract of date February 10, 1911. The plaintiffs charge various shortcomings of the contractor resulting, as they say, in a practically worthless pavement. The city was enjoined by the Circuit Court from collecting an assessment levied by an ordinance of October 4, 1911. By another ordinance of December 11, 1912, the municipality attempted to reassess the expense of the improvement upon the property of plaintiffs, but this in turn was enjoined by the Circuit Court. Professing to operate under the reassessment clause already quoted, the city again by an ordinance approved July 24, 1913, so far as it could lawfully do, made a renewed assessment for the same improvement, all after the pavement was actually laid. The Circuit Court heard the case on the pleadings and evidence and dismissed the suit; hence this appeal by the plaintiffs.     REVERSED AND DECREE RENDERED.

For appellants there was a brief over the names of *Mr. Francis S. Ivanhoe* and *Messrs. Crawford & Eakin,* with an oral argument by *Mr. Thomas H. Crawford.*

For respondent there was a brief with oral arguments by *Mr. James D. Slater* and *Mr. J. P. Rusk.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The vital question in this case is whether, under the charter and in the circumstances to which it is at-

tempted to apply its provisions mentioned, the city could make the reassessment in question. It is well settled that the imposition of a tax upon property by a municipality for a local improvement is a hostile proceeding, and, before realty can be charged with such an expense, the taxing body must have complied with the provisions of its fundamental law on the question of jurisdiction: *Strout* v. *City of Portland,* 26 Or. 294–299 (38 Pac. 126); *Smith* v. *Minto,* 30 Or. 351 (48 Pac. 166); *Bank of Columbia* v. *Portland,* 41 Or. 1–8 (67 Pac. 1112); *Oregon Transfer Co.* v. *Portland,* 47 Or. 1 (81 Pac. 575, 82 Pac. 16); *Applegate* v. *Portland,* 53 Or. 552–556 (99 Pac. 890); *Jones* v. *City of Salem,* 63 Or. 126–132 (123 Pac. 1096). If the city moves in such matters without first acquiring jurisdiction, it does so at its peril if nothing else is shown.

The *quasi* process in the present instance, by which alone the city could acquire jurisdiction, is the notice described in the quoted provisions of the charter. It is required, among other things, that there shall be contained therein a description of the improvement proposed, the boundaries of the district to be affected or benefited thereby, and the estimated cost thereof. This language plainly contemplates a work to be done in the future. It has no reference to past improvements. It manifestly gives to the property holder who is to be assessed the right to be heard in advance, not only as to the amount of the levy, but also as to the kind of improvement. It is conceded by the answer that this was not done in the first instance. In respect to the final effort to tax the realty of the plaintiffs, the improvement had already been made, whatever its kind or nature; the question about the sort to be adopted had been irrevocably decided; the pave-

ment, whether good or bad, was in place—all without a previous opportunity for plaintiffs to be heard upon that subject. Confessedly, as disclosed by the answer, this charter right of the taxpayer was utterly ignored in the beginning for want of notice. That pleading expressly disavows any reliance upon the original proceedings, but claims under the ordinance of July 24, 1913, passed long after the work was done.

2–4. It is admittedly competent for the legislative power to provide one or more methods, concurrent or successive in their operation, for the purpose of collecting assessments designed to cover the cost of improvement yet to be made, or already made, either of which methods a municipality may pursue in the transaction of such affairs. It is also without question that, although operations under existing laws may have come to naught for want of jurisdiction, yet the legislative power by subsequent enactments may provide a new and independent formula ignoring even the question of jurisdiction under former proceedings, and yet levy a tax or provide for the same to cover the cost of an actual improvement. This is abundantly taught in such cases as *Thomas* v. *Portland,* 40 Or. 50 (66 Pac. 439); *Duniway* v. *Portland,* 47 Or. 103 (81 Pac. 945); *Hughes* v. *Portland,* 53 Or. 370 (100 Pac. 942); *Mills* v. *Charleton,* 29 Wis. 400 (9 Am. Rep. 578); *Schintgen* v. *La Crosse,* 117 Wis. 158 (94 N. W. 84); *Smith* v. *Detroit,* 120 Mich. 572 (79 N. W. 808). That, however, is not the situation in this instance. The language of the charter under which the defendants claim is this:

"If any assessment is set aside by order of any court, the council may cause a new one to be made in like manner for the same purpose for the collection of the amount so assessed."

As previously pointed out, in proceedings of this character, the charter plainly contemplates street work yet to be done. It has no retroactive language. When the improvement is already made, it is impossible to make a reassessment "in like manner for the same purpose" as required by the charter. In other words, after the doing of the work, whether good, bad or indifferent, a situation is presented to which the present provisions of the La Grande charter cannot be applied. The giving of notice in the terms described by the excerpts of the organic law under which that municipality operates is a condition precedent which must be observed before the city can acquire jurisdiction to make an improvement. The contention of the defendants would make the acquisition of jurisdiction a condition subsequent. The plain logic of their position is that, notwithstanding the provisions of the charter, they may first decide and afterward hear. No independent or different proceeding is established by the charter for collecting such a tax. It simply provides for a reiteration of the same process, and does not dispense with any of the charter rights reserved to the property holder. The situation is simply one where the water of jurisdiction has run past the mill of opportunity. The time to have asserted the power to reassess was before the right of the taxpayer to be heard on the kind of improvement had been ignored and rendered worthless. If jurisdiction had been acquired regularly at the outset, it would have been permissible as the charter now stands to return and correct errors in the apportionment of the expense by a reassessment. In any case, if the city would retrace its steps for corrective purposes, it must go clear back to where it obtained jurisdiction, to

which alone can it tack renewed efforts to tax property. It would have been competent for the legislative power of the town to dispense with all previous notice of intention to install betterments and to empower the council to call upon the taxpayer for the first time after the work was completed, but it has not done so. By failing to give sufficient previous notice and yet persisting in the prosecution of the work, the city has reversed the chronological order of the process enjoined by its charter.

The case presented by the defendants is one in which they have decided beforehand against the taxpayer in one of the most important particulars of the assessment scheme. Jurisdictional power cannot, like the phoenix, rise from its own ashes, and where the case presented is one in which full compliance with the essentials of jurisdiction cannot be had, repetition of the same process will never confer jurisdiction. In short, it appears by the record that, on account of the improvement having been previously made and not still in contemplation, it is impossible for the council, in the language of the charter, to cause a new assessment "to be made in like manner for the same purpose."

It is unnecessary for us to consider whether the pavement was good or bad, or whether the contractor complied with his engagement. Not having authority to proceed at all, the action of the city did not bind the taxpayers. These considerations lead to a reversal of the decree and the rendition of one here according to the prayer of the complaint.

REVERSED AND DECREE RENDERED.

MR. JUSTICE EAKIN did not sit.