477 P.2d 285

**HENNINGSON, DURHAM & RICHARDSON, a Nebraska corporation, doing business in the State of Arizona, Appellant,**

v.

**Robert PROCHNOW, E. H. Weigel and Tio Tachias, Comprising the Board of Supervisors of Coconino County ex rel. Oakwood Improvement District, and Thomas Breen and Co., an Arizona corporation, Dave Ryan and Joseph A. Moller, individually and representing Northernaire and Oakwood *Home Owners Association,* Intervenors-Appellees.**

No. I CA–CIV 921.

Court of Appeals of Arizona,
Division 1,
Department B.

Nov. 25, 1970.

Rehearing Denied Dec. 28, 1970.

Review Denied May 11, 1971.

Joe R. Purcell, and Lewis & Roca, by John P. Frank, Phoenix, for appellant.

Gerald N. Thomas, Deputy County Atty., Flagstaff, for appellees.

Gust, Rosenfeld & Divelbess, by Fred H. Rosenfeld, Phoenix, for intervenor-appellee Thomas Breen and Co.

Mangum, Christensen & Wall, by Douglas J. Wall, Flagstaff, for intervenors-appellees Ryan and Moller.

JACOBSON, Judge.

This is an appeal from a declaratory judgment determining the liability of a County Improvement District for engineering services.

The Board of Supervisors of Coconino County, Arizona, acting in its dual capacity as the Board of Supervisors and as the Board of Directors of the Oakwood Improvement District brought a Declaratory Judgment action in Coconino County Superior Court against defendant-appellant, Henningson, Durham & Richardson, a Nebraska corporation. The Board sought a declaration of the district's liability on an engineering contract entered into between Oakwood Improvement District and the defendant. Thomas Breen and Co., the majority real property taxpayer in the Improvement District and Ryan & Moller, two other real property owners in the district, were allowed to intervene in the action.

The Coconino County Superior Court on findings of fact and conclusions of law entered judgment in favor of the improvement district holding that the project had been abandoned, and that this abandonment was necessitated by reason of the fault of the defendant.

The facts necessary for the determination of this appeal are as follows. Appellee, Thomas Breen & Co., was prior to June of 1966, developing a subdivision on real property located south of Flagstaff, Arizona. Pursuant to this development, Breen contacted the defendant relative to certain street and sewer improvements desired on the property. The defendant pursuant to this contract prepared preliminary studies and proposals concerning these improvements. Following the preparation of these studies and proposals it was then decided

that the proposed improvements on the subdivision could best be handled through the creation of an improvement district and to this end, Breen, as a majority landowner in the subdivision filed a petition with the Board of Supervisors of Coconino County seeking the establishment of the Oakwood Improvement District. The district was subsequently formed pursuant to Title 11, Chapter 5, Arizona Revised Statutes, 1956, as amended. Within its boundaries was the land comprising Breen's subdivision.

Following the formation of the district, the Board of Supervisors of Coconino County, acting as the Board of Directors of Oakwood Improvement District, entered into an engineering contract with the defendant on June 6, 1965, this contract being the subject of the instant litigation.

The engineering contract called for defendant to perform certain engineering services, including the drawings of plans and specifications for a sewage disposal system and for the layout and engineering services necessary for streets and roads in the subdivision. The controversy here centers upon the provisions of the contract providing for compensation to the defendant for these engineering services. This provision of the contract provides as follows:

> "The fee to be paid the engineer by the district for the performance of the services enumerated shall be the following percentages of the net construction cost of the project if actually constructed, or of the official engineer's estimate of improvement cost for any project *which is abandoned for any reason not the fault of the engineer.*" (emphasis added)

After execution of the contract, the defendant on June 20, 1965, filed with the clerk of the district detailed plans and specifications for the improvements, together with an estimate of the cost of improvements. The estimated cost of the improvements at this time as established by exhibits was the sum of $403,607.75. On this same date the Board of Directors of the District passed a resolution approving the plans, specifications and the estimates,

together with a Resolution of Intention indicating the Board's intention to order the construction of the improvements provided in the plans, specifications and estimates on file, this resolution being required by ARS § 11–711 (1956). The Resolution of Intention, after describing generally the type of improvements to be undertaken, went on to say "[A]ll of which above specifications are on file in the office of the Clerk of the district. Said plans and specifications are hereby referred to for a more particular description of said work and made a part hereof."

The Resolution of Intention was then published and posting was made on the subject property in accordance with ARS § 11–715, as amended.

Prior to the formation of the district, defendant had submitted preliminary plans of the proposed sewage improvement to the State Health Department for informal approval by that body. The preliminary plans contemplated the disposal of sewer effluent into an area called Munds Canyon. The State Health Department at that time gave its "preliminary approval" to this disposal scheme. Subsequent to June 20, 1966, the defendants submitted to the State Health Department final plans and specifications (specifications had not previously been submitted to the State Health Department) embracing the Munds Canyon sewer effluent plan. The Health Department disapproved the Munds Canyon Plan. Following voluminous correspondence and various other proposals, the Health Department approved a "pump back" system of sewer effluent disposal.

An additional problem arose following the June 20, 1966, Resolution of Intention, when an on-sight inspection of the proposed roadway system showed that the plans and specifications did not adequately provide for drainage and surfacing. All of the experts, including defendant's own officers testified that the road plans were inadequate as submitted on June 20, 1966, and were of no value. The testimony of Mr. Lahlum,

an officer of the defendant, is illustrative of this type of evidence:

"Q. Now, from what I understand from what your testimony is just a second ago, that that estimate, the original estimate, was made without your ever seeing the project site?

"A. I had seen it before but not as thorough as I did this time.

"Q. Without making any tests?

"A. That's correct.

"Q. And it was actually drawn in accordance with a survey made by someone other than your firm?

"A. Yes.

"Q. Uh huh. And, then after you drew—

"A. I would like to expand a little bit on the survey, if I may. When we started on this project, I believe it was in May sometime, we were told by the development company interested that they had a survey crew available at the site, and any information we would need we could get this survey party to do at that time.

"Q. Uh huh. But, you actually relied on those surveys?

"A. Yes.

"Q. And they then proved to be at least the original estimate, the original Plans, proved to need certain changes?

"A. The preliminary Plans, yes.

"Q. And in order to be feasible they needed certain changes?

"A. Yes.

"Q. Because they would wash away?

"A. Yes.

"Q. So they wouldn't be of any real value without the changes?

"A. No."

The changes required in the roadway system alone increased the estimated cost of that portion of the project from $92,-948.75 to $146,138.00, an increase of $53,-189.25. The changes on plans and specifications were made by erasures on the orig-

inal plans and specifications filed in the Office of the Clerk on June 20, 1965. After the final increased estimate was filed, no new Resolution of Intention was adopted by the Board of Directors of the Improvement District nor were new publications and postings made or hearings held.

Bids were advertised for the project based on the changed plans and specifications and estimate of cost. When no bids were received the project was abandoned.

Defendant's primary contention in its briefs on appeal is that the evidence fails to sustain the trial court's finding of fact No. 6 and its corollary conclusion of law No. 1. These are as follows:

"No. 6. The changes and revisions were necessitated by reason of the fact that the original plans and specifications were inadequate in that the plans for the sewer system were unacceptable to the Arizona Board of Health and the specifications and plans for the grading and construction of streets did not provide proper surface or drainage."

     *     *     *     *     *     *

"No. 1. The proceedings were abandoned by operation of law by reason of failure of defendant's original plans and specifications to be proper and acceptable."

At the time of oral argument, defendant's counsel agreed that there was sufficient evidence to support the trial court's finding No. 6, but emphatically argues that this finding does not indicate that the changes required were the result of any fault of the defendant for the reason that nowhere in the court's designated findings of fact is there an express finding by the court of any fault on the part of the defendant to justify the court's judgment. This argument in essence injects a new issue into this appeal—the sufficiency of the trial court's findings of fact to justify its judgment. Defendant's opening brief on the other hand, stated as one of the questions for review:

"[d]id the trial court err in its findings of fact and conclusion of law wherein it

found that this project was abandoned due to the fault of Appellant engineers and that therefore said appellants could not be paid * * *."

While appellant's counsel is given great latitude on oral argument to present matters to the court in a different manner and with different emphasis than these matters are presented in their briefs, we believe that the introduction of new theories of error at the time of oral argument to which appellee has not had an opportunity to reply must be disregarded. *See* Quila v. Estate of Schafer, 7 Ariz.App. 301, 438 P. 2d 770 (1968). We therefore will confine our decision to those questions raised in the briefs.

We have repeatedly held that where there is reasonable evidence to support the trial court's findings of fact, these will not be disturbed on appeal. Deck v. Hammer, 7 Ariz.App. 466, 440 P.2d 1006 (1968). There may be some question as to whether the action of the State Health Department in disapproving the plans for the sewage disposal system is the fault of the defendant, when the defendant obtained prior preliminary approval of these basically similar plans prior to their submission to the district. However, the evidence is clear that the roadway plans as initially submitted by the defendant were defective and worthless and that the changes necessary to put these plans in acceptable form materially increased the cost of the project. There is no contention that the plans for the sewer system and the road plans were severable—the plans embracing the sewer system and roads being one integral project.

"Fault" is defined in Black's Law Dictionary (4th edition) as "any deviation from prudence, duty, or rectitude; any shortcoming, or neglect of care or performance resulting from inattention, incapacity, or perversity." A mere review of the testimony of Mr. Lahlum, quoted above, requires us to hold that the evidence supports the trial court's determination that the increased cost of the project was directly related to the fault of the defendant.

This brings us to a determination as to whether the increased cost of the project, not reflected in the original Resolution of Intention, operated to invalidate the original proceedings as a matter of law.

From a reading of the statutes creating county improvement districts, it is readily apparent that notice to persons affected by the improvement district and the corresponding right of those persons to a hearing are given during all stages of the creation, and execution of the improvement district. This is for the obvious reason that any cost of the completed project required by the district becomes a lien on the land of the persons owning property in the district, and these lands are subject to foreclosure and loss for non-payment of assessments. See ARS § 11–734, et seq. (1956). Due process would require an opportunity to be heard on all phases of this lien creating process. Ariz.Const. Art. 2, § 4. Thus, all statutes governing improvement districts are to be strictly complied with. See Nicholas v. Fowler, 89 Ariz. 7, 357 P.2d 331 (1960); Phoenix Title & Trust Co. v. Burns, 96 Ariz. 332, 395 P.2d 532 (1964).

ARS § 11–713 (1956) specifically provides that "[t]he assessment for any lot shall not exceed its proportion of the estimate." The estimate referred to by this statute is that estimate of cost which must be on file prior to passage of the Resolution of Intention and which must be referred to in the Resolution of Intention to advise property owners in the district the maximum amount that it is going to cost them for the improvement. A hearing on the Resolution of Intention is also provided for under the provisions of ARS § 11–716, (1956). The necessity that the information available at that time be correctly stated is highlighted by the reasoning in Jones v. Barber Asphalt Paving Co., 174 Mo.App. 393, 160 S.W. 276 (1913):

"The resolution affords him an opportunity to be heard on the subject of the necessity and wisdom of the proposed improvement, and therefore it is indispensable that he should have accurate information. Should the subsequent ordinance and contract for the improvement deviate materially from the resolution, the whole proceeding will be void for the reason that the property owners have been deprived of the right the law intends they should have to be informed at the start of the true nature of the improvement for which they are to pay." 160 S.W. at 279.

That the estimated cost of the improvement be ascertainable at the time the Resolution of Intention is adopted, has been held jurisdictional to the board's subsequent ordering of the work to be performed. City of Mattoon v. Stump, 414 Ill. 319, 111 N.E.2d 551 (1953).

Defendant argues that the plaintiffs and intervenors waived or are estopped to deny liability under the revised estimate because of their acquiescence in the changes in plans made by the defendant. To this end defendant cited numerous cases to the court to the effect that where a governmental agency requests changes or extras not called for under a contract it may not avoid liability for these changes or extras because they were not a part of the original written contract. See generally, 1 A.L.R.3d 1279 et seq.

This is not the case here. The changes and extras made by defendant in the plans and specifications were not the result of direct requests made by the plaintiffs for something over and above that required by the contract of the defendant, but were the result of defective plans and specifications for that which was specifically called for by the original contract.

Defendant next contends that the necessity of adopting a new Resolution of Intention after the revised estimate of costs was filed was brought to the attention of the District by bond counsel and that the District and Breen specifically disregarded this advice and let bids based on the defective proceedings. Under such circumstances the defendant argues the district is estopped to rely on the failure to adopt a new Resolution of Intention. We need not

decide in this case whether the doctrine of equitable estoppel may be asserted against a public body such as an Improvement District for this due process defect was properly raised and asserted by property owners in the district against whom estoppel cannot be asserted—Ryan and Moller. These two property owners in the district had no knowledge whatsoever of the change in plans on the sewer, the change in plans on the roadways, the increased cost estimate, nor of the necessity for the adoption of a new Resolution of Intention to cure the defect in the proceedings caused by the fault of the defendant. We know of no principle of law which would foreclose them from raising this issue even though other defendants might be estopped to do so.

We therefore hold that the initial increase in the estimated cost of the project following the passage of the resolution and the notice and hearing thereon, was caused by the fault of the defendant and voided the proceeding as a matter of law.

The defendant finally contends that it is entitled, in any event, to collect in quantum meruit for the services it performed. The term quantum meruit means literally "as much as he deserves." Dailey v. Testone, 72 Wash.2d 662, 435 P.2d 24 (1967). Inherent in this equitable doctrine is the conferring of a benefit on the person sought to be held liable. Ylijarvi v. Brockphaler, 213 Minn. 385, 7 N.W.2d 314 (1942). Here the plans and specifications as they were originally drawn were worthless. No benefit flowed to the plaintiffs from their preparation and quantum meruit would not lie. The subsequent changes in the plans, as we have pointed out, voided the project and no benefit flowed to the plaintiffs from these changed plans. Again quantum meruit does not lie.

Having held the trial court was correct in finding that the initial key that defendant needed to unlock the door of liability—no fault—was not present, the judgment of the trial court is affirmed.

Judgment affirmed.

EUBANK, P. J., and HAIRE, J., concur.