574 P.2d 542

Margaret BUTLER, M. H. King Co., Earl J. Miller and John Yancey, Sun Valley Land Co., Mildred P. Hoggan, Earl J. Miller, Neola Cox Clark and Clarence Orson Cox, Agnes D. Cox, Elmer Taylor, Oliver Haroldson, Earl J. Miller and Frank Fullmer, and Estate of Douglas R. Parkinson, Deceased, Appellants,

v.

CITY OF BLACKFOOT, Idaho, Respondents.

No. 12348.

Supreme Court of Idaho.

Jan. 31, 1978.

**855**

H. William Furchner of Furchner, Martsch & Baker, Blackfoot, for appellants.

Jay H. Stout of Stout & Moss, Blackfoot, for respondents.

McFADDEN, Justice.

The City Council of Blackfoot created Local Improvement District No. 37 and denied all objections to the district's reassessment roll. Appellant property owners appealed to the district court of the Seventh Judicial District. The district court confirmed the reassessment roll, holding that Local Improvement District No. 37 was properly created and that the reassessments were valid. The district court also held that any improvement made in the district prior to its creation was properly included in the assessment and reassessment costs and dismissed the appeal. This appeal is from that judgment. The judgment is reversed and the case remanded for further proceedings consistent with this opinion.

On July 16, 1973, the Blackfoot City Council entered a cost-sharing contract with the State of Idaho to reconstruct a seven-block portion of West Bridge Street in Blackfoot. On the same day, the City Council contracted with Goodwin Construction Company of Blackfoot to install a Bridge Street waterline. Subsequently, the City Council formulated plans to beautify the two-block portion of West Bridge Street from Northwest Main Street to Ash Street that is involved in this appeal. This two-block portion is Unit No. 1 of Local Improvement District No. 37.

On its own initiative, the Blackfoot City Council passed a resolution of intention to create a local improvement district on April 19, 1974. At the May 9, 1974, hearing on the resolution of intention to create the local improvement district, all property owners' protests were dismissed. After finding that the petition for initiation of the district was proper, that the district would be in the best interests of the city, and that there was a reasonable probability that its obligations would be paid, the City Council passed Ordinance No. 763 creating Local Improvement District No. 37.

Prior to the initiation of the district, two change orders to the City-Goodwin contract, totaling $6,835.61 and $481.80 respectively, were executed authorizing an irrigation system for ornamental shrubbery as part of the proposed beautification project. The city also authorized a change order to the City-State contract for the beautification project at an estimated cost of $24,339.60. The City Council also opened and selected a bid for Local Improvement District No. 37 prior to the protest hearing, although the selected bid was not approved until afterwards.

The question presented for resolution on appeal is whether a municipality may assess costs that are incurred prior to the creation of a local improvement district against benefited, abutting property owners. Our resolution of this case necessitates answering two basic issues: (1) whether the City of Blackfoot has statutory authority to assess these costs against appellant property owners; and (2) if not, whether the City of Blackfoot could collect these costs from appellant property owners by reassessing these costs after the creation of the local improvement district.

I

Appellants maintain that under the 1967 Local Improvement District Code, (Title 50, Ch. 17), in effect during this period,[1] three

---

1. In 1976, several sections of the 1967 Local Improvement District Code were repealed, amended or re-enacted under different code numbers. The parties do not contend that

formal actions are required to be taken by the City Council *before* any costs can be incurred that will be assessed against abutting property owners: passing a resolution of intention to create a local improvement district; hearing and resolving protests of property owners; and determining that the district will be in the best interests of the property affected and that a reasonable possibility exists that the district can discharge its indebtedness. Because some of the costs of Local Improvement District No. 37, Unit No. 1, were generated prior to the May 9, 1974, protest hearing, appellants argue that the City Council failed to acquire statutory jurisdiction to order the improvements and to assess any of these costs against their properties.

■ Statutes authorizing local assessments must be strictly construed and complied with by municipalities exercising their statutory grants of power. *Reynard v. City of Caldwell,* 53 Idaho 62, 21 P.2d 527 (1933). When the legislature enacts laws providing for the method to be adopted and followed by cities and villages in making local improvements, these provisions must be strictly followed. *Byrns v. City of Moscow,* 21 Idaho 398, 121 P. 1034 (1912).

Under I.C. § 50–1711, a local improvement district may be initiated by a petition signed by sixty per cent (60%) of the property owners within the proposed district or may be adopted by resolution by affirmative vote of three fourths (¾) of the city council members. After the initiation of the district's organization, the City Council must pass a resolution declaring its intention to create a local improvement district, specifying *inter alia* the total estimated costs and expenses to be assessed, the location of the proposed improvements, the property subject to the assessment and the date for hearing property owner protests. I.C. § 50–1713. Following notification of the hearing date for public protests, the City Council must conduct a hearing on the proposed local improvement district. Idaho Code § 50–1716 provides that:

> these amended provisions govern or alter the disposition of the instant case. Our discussion, therefore, is directed solely to the 1967 Local

"At the time set for the hearing [on the proposed local improvement district], the council shall examine the petition [for initiation of the local improvement district], whether protests are filed or not, and determine the value of the property included in the proposed district, the purposes of the creation of the district or all other matters pertinent to the organization of the district. If upon such hearing and examination, the council finds the petition to be proper, that the district will be for the best interest of the property affected and the municipality and that there is reasonable probability that the obligations of such district will be paid, then it shall report such findings in its minutes and *shall be deemed to have acquired jurisdiction to order the proposed improvements.* And the council at such meeting shall then, or at a subsequent time, enact an ordinance providing for such improvements and creating a local improvement district * * *." (Emphasis added.)

In *Murray v. City of La Grande,* 76 Or. 598, 149 P. 1019 (1915), the Oregon Supreme Court addressed the propriety of a local street improvement assessment in which the notice of intention to levy a special assessment was defective. The city charter required a preliminary report from three commissioners appointed from the city council stating the property to be involved and the benefits to be derived from the proposed improvement. After this report, the city council was required to give notice of its intention to levy a special assessment, stating the purpose of the improvement, a description of the improvements, the boundaries of the district, the estimated cost and the time set for hearing protests from aggrieved property owners. After complying with these provisions the city council was "deemed to have acquired jurisdiction to order the making of such improvements." The city council attempted to notify proper-

Improvement District Code and references to code numbers are to 1967 code provisions.

ty owners but failed to state the purpose, description, boundary, or estimated cost of the improvement. The city completed the street improvement and then attempted to reassess the improvement expenses upon the affected property owners after the improvements had been completed. The Oregon Supreme Court stated:

"As previously pointed out, in proceedings of this character, the charter plainly contemplates street work yet to be done. It has no retroactive language. * * * The giving of notice in the terms described by the excerpts of the organic law under which that municipality operates is a condition precedent which must be observed before the city can acquire jurisdiction to make an improvement. The contention of the defendants would make the acquisition of jurisdiction a condition subsequent. The plain logic of their position is that, notwithstanding the provisions of the charter, they may first decide and afterwards hear. * * * The situation is simply one where the water of jurisdiction has run past the mill of opportunity. * * * " *Id.,* 149 P. at p. 1021.

■■■ The process by which municipalities acquire statutory jurisdiction to order local improvements, the costs of which shall be assessed against benefited, abutting property owners, is described in I.C. § 50–1716. In order to acquire such jurisdiction, the municipality is required to conduct a hearing on the proposed district and after such hearing is required to ascertain whether the district was properly initiated, will be in the public's best interest, and will be able to pay its obligations as they mature. This language contemplates costs to be incurred in the future, after public protests have been voiced. Although the decision in *Murray v. City of La Grande, supra,* is distinguishable from the case at hand, we find its logic persuasive. A municipality acquires no statutory jurisdiction to incur costs to be assessed against abutting property owners under the 1967 Local Improvement District Code until after it has complied with the provisions in I.C. § 50–1716. We therefore hold that the City of Blackfoot initially

failed to acquire statutory jurisdiction to assess the appellants with those costs incurred prior to the May 9, 1974, hearing. These costs cannot be assessed against the appellants. Following the hearing, the city did acquire statutory authority to incur local improvement costs and those costs incurred after May 9, 1974, were properly assessed against appellants.

## II

■■ Respondent contends that any defect in the district's creation was nevertheless cured by the subsequent reassessment. We disagree.

Idaho Code § 50–1729 provides that:

"In all cases of assessments for local improvements of any kind against any property, persons or corporations whatsoever, wherein said assessments have failed to be valid in whole or in part *for want of form or sufficiency, informality, irregularity or nonconformance with the charter provisions, or laws governing such assessments,* the council shall be, and they are hereby, authorized to reassess such special taxes or assessment and to enforce their collection, in accordance with the provisions of law existing at the time the reassessment is made. But no mistake, in description of the property, or the name of the owner, shall be held to affect any assessment or any lien created thereby under the provisions of this code, or any law of this state, unless such mistake or error renders it impossible to identify the property so assessed.

"When for any cause, mistake or inadvertence, the amount assessed shall not be sufficient to pay the cost and expenses of the improvement made and enjoyed by owners of property in any local improvement district where the same is made, it shall be lawful, and the council is hereby directed and authorized to make reassessments on all property in said local improvement district sufficient to pay for such improvements, such reassessment to be made and collected in accordance with the provisions of the law existing at the time of its levy." (Emphasis added.)

The question presented is whether the reassessment statute is broad enough to enable a municipality to reassess property owners for costs incurred without jurisdiction. Several courts have addressed their statutory reassessment provisions; however, most such decisions were predicated upon reassessment statutes expressly validating jurisdictional defects. Because the wording of reassessment provisions vary considerably, we do not find these decisions helpful in construing Idaho's reassessment statute. We cannot construe the words "for want of form or sufficiency, informality, irregularity or nonconformance" to mean "void for lack of jurisdiction." Accordingly we conclude that the legislature did not intend to correct jurisdictional defects under the reassessment statute. Where a municipality originally lacks statutory jurisdiction to incur expenditures because it has not complied with the applicable statutory provisions, it cannot later acquire jurisdiction to incur those costs by complying with the statutory procedures after the costs have been incurred.

■ Respondent also maintains that since the assessments were completed prior to 1976 any defect in the assessment process was cured by S.L. 1976, Ch. 160, § 3, which provides:

"All local improvement districts heretofore created or attempted to be created, and all assessments heretofore levied therein or attempted to be levied therein, which have not heretofore been adjudicated invalid, and all notices, assessments and proceedings taken in relation thereto whether void, defective or invalid, in all cases where the improvements contemplated have been made or contracted for, are hereby ratified, validated and confirmed and made sufficient to the same extent as if the same were perfected in the first instance. All acts and proceedings of any municipality had under or by virtue of the local improvement district code, and all contracts heretofore or hereafter made, and all warrants and bonds heretofore or hereafter issued pursuant to said acts and proceedings, are hereby ratified, validated and confirmed. * *."

A plain reading of this section reveals that the legislature sought to validate all invalid assessments previously levied, regardless of the nature of the defect. On the other hand, appellants maintain that validating an assessment void for want of jurisdiction violates Article 11, § 12, of the Idaho Constitution, providing:

"The legislature shall pass no law for the benefit of a railroad, or other corporation, or any individual, or association of individuals retroactive in its operation, or *which imposes on the people of any county or municipal subdivision of the state, a new liability in respect to transactions or considerations already past.*" (Emphasis added.)

From the Idaho Constitutional Convention proceedings of 1889 it appears that each clause of Article 11, § 12, was meant to prohibit a separate legislative practice. The first clause was to prohibit retroactive laws in general; the second was to prevent any law imposing new liabilities for past transactions. Mr. Morgan clarified the purposes of Article 11, § 12, saying:

"The gentleman misapprehends, it seems to me, having charge of this bill, the effect of this provision in the constitution. It is this: 'The legislature shall pass no law for the benefit of a railroad, or other corporation, or any individual or association of individuals retrospective in its operation.' * * * Again, the second clause of the section is this: They shall pass no law 'which imposes on the people of any county or municipal subdivision of the state, a new liability in respect to transactions or considerations already past.' * * *." Idaho Constitutional Convention, Proceedings and Debates, vol. II, pp. 1067–68.

The convention's concern was primarily directed at the first clause prohibiting retroactive legislation. The discussion regarding the second clause of Article 11, § 12, was primarily concerned with the necessity of such a clause, the argument being that such a provision was superfluous since the legislature had no power to implement such

legislation. Mr. Beatty summarized the convention's attitude concerning the second clause of Article 11, § 12:

> "As to the latter part, 'or which imposes on the people of any county or municipal subdivision of the state, a new liability in respect to transactions or considerations already past,' I doubt whether that can be done. I doubt whether the legislature can pass an act imposing a new liability upon the people. However, that part of it I should have no objection to if it were really necessary. My objection to that is that it is unnecessary, because the legislature cannot do that." Idaho Constitutional Convention, Proceedings and Debates, vol. II, p. 1073.

Article 11, § 12, not only prohibits retroactive legislation in appropriate cases, but also prohibits the imposition of laws imposing new pecuniary liabilities "in respect to transactions or considerations already past." We find that S.L. 1976, Ch. 160, § 3, violates the constitutional prohibition of Article 11, § 12, of the Idaho Constitution and for this reason cannot be the basis upon which appellants are to be subjected to reassessments for those costs incurred prior to the time that the City of Blackfoot acquired jurisdiction to incur the costs. A curative act is by its nature remedial and retroactive in its application. *Davis v. Union Pacific Ry. Co.,* 206 Kan. 40, 476 P.2d 635 (1970); *McKenzie v. Mukilteo Water Dist.,* 4 Wash.2d 103, 102 P.2d 251 (1940); *Addison v. Fleenor,* 65 Wyo. 119, 196 P.2d 991 (1948); 82 C.J.S. *Statutes* § 430 (1953). We do not decide whether S.L. 1976, Ch. 160, § 3, violates the constitutional prohibition against retroactive legislation because we hold that this section violates Article 11, § 12, of the Idaho Constitution by imposing a "new liability in respect to transactions or considerations already past." Prior to the curative act appellants could not be assessed for costs incurred by the Blackfoot City Council prior to May 9, 1974, because the city lacked statutory authority to incur these expenses. The curative act attempts to thereafter impose these costs upon the appellants. This is an attempt to impose a new liability for a transaction or consideration already past.

The judgment of dismissal is reversed and the case is remanded for further proceedings, consistent with this opinion, to determine the exact amounts expended by the city on the proposed district prior to May 9, 1974, with appropriate adjustments, reflecting these amounts, to be made to the district's reassessment roll. Costs to appellants.

DONALDSON, BAKES and BISTLINE, JJ., concur.

SHEPARD, C. J., concurs in the result.