777 P.2d 697

Forrest A. BRADEN and Margaret Braden, husband and wife; Texas Hill Farms, Inc., an Arizona corporation; Gila Land & Investment Co., an Arizona corporation; Forrest Farms, Inc., an Arizona corporation; Turkey Farms, Inc., an Arizona corporation; Barbara Braden; Carlos Farms, Inc., an Arizona corporation; Vern Hankins and Rosemary Hankins, husband and wife; Virginia Lands, Inc., an Arizona corporation; Bruce Williams and Marna Williams, husband and wife; Hans Holling; Blanca Farms, Inc., an Arizona corporation; San Cristobal Farms, Inc., an Arizona corporation; C.R. Krimminger and Katheryn L. Krimminger, husband and wife; Chukar Farms, Inc., an Arizona corporation; Garden Farming Co., an Arizona corporation; Grano Farming Co., an Arizona corporation; Jerry Lindsey and Sondra Lindsey, husband and wife; Jack Olberding; Leonard Jones; Roland Loudermilk; T.A. Davis; Walter Jaeger; David Nieto; Catherine A. Wilkinson; Frank Grossman; Homer Halvarson; Claude Thatcher; Louise Weber; Joseph L. Hoffman and Shirley Hoffman, husband and wife; Milo Smith and Marguerite Smith, husband and wife, Plaintiffs–Appellants,

v.

YUMA COUNTY BOARD OF SUPERVISORS and Yuma County Board of Supervisors as the Board of Directors of Special Flood Control District (Zone 3); and the Arizona Department of Revenue, Defendants–Appellees.

No. 1 CA–CIV 9932.

Court of Appeals of Arizona
Division 1, Department C.

July 20, 1989.

**200**

Westover, Choules & Shadle, P.C. by Steve Morgan and A. James Clark, Yuma, for plaintiffs-appellants.

Bowman & Smith, P.C. by William Michael Smith and David S. Ellsworth, Yuma Co. Atty., Yuma, for defendants-appellees.

## OPINION

CONTRERAS, Judge.

This appeal concerns the levying of special assessments in connection with the establishment of Zone 3 of the Yuma County Flood Control District. Appellants, landowners within the zone, brought this action challenging the validity of the assessments based on alleged defects in their authorization by the Yuma County Board of Supervisors. Appellants appeal from the trial court's order granting summary judgment in favor of appellees. The determinative issue on appeal is whether the trial court erred in finding that the challenged actions of the Board were proper despite the Board's failure to strictly comply with the statutory requirements for establishing a zone project. We conclude that the trial court erred in upholding the assessments. Therefore, we reverse the summary judgment.

The material facts are not in dispute. On March 2, 1981 appellees, acting as the Board of Directors of the Flood Control District, adopted a resolution for the establishment of "Zone 3" within the District pursuant to former A.R.S. §§ 45–2356 to 45–2364. The zone was created for the purpose of constructing a bridge over Avenue 64E across the Gila River. Although the preamble to the resolution noted a recommendation that a river crossing be constructed, the resolution itself was limited to establishing Zone 3, designating boundaries, setting a hearing on establishment of the zone, and recording and publishing the resolution. The resolution was subsequently published on March 6, 13 and 20, 1981, and was posted in approximately 30 places.

The initial resolution stated in pertinent part:

WHEREAS, The Board of Supervisors of the County of Yuma established on September 5, 1972, a Special Flood Control District in accordance with the provisions of Title 45, Chapter 10, Article 5, Arizona Revised Statutes, and

.   .   .   .

WHEREAS, said Board of Supervisors recommendation includes the conducting of hydrological and engineering studies, preparation of plans, specification, and cost estimate and the calling for bids to construct a river crossing of 10,000 cubic feet per second capacity at Avenue 64E and the Gila River, and,

WHEREAS, the State of Arizona with Arizona Laws 1980, Chapter 193 (S.B. 1163) and S.B. –983–915 provides a State of Arizona contribution of Six Hundred Fifty Six Thousand Two Hundred Fifty Dollars, ($656,250.00) and The Special Flood Control District Zone 3 will contribute Two Hundred Twenty Thousand Dollars ($220,000.00), by the levy and collection of taxes upon all the property real and personal in zone 3.

WHEREAS, the public health, comfort, convenience, necessity or welfare will be promoted by the division of the Special Flood Control District into said zones,

NOW, THEREFORE, BE IT RESOLVED by the Board of Directors of the Special Flood Control district that a zone 3 within said district be established, and

FURTHERMORE, the boundaries of Zone 3 shall be as shown on the attached map, generally described as that portion of the Gila and Salt River Meridian, Yuma County, Arizona. . . .

FURTHERMORE, a hearing is hereby set by the Board of Directors of the Special Flood Control District of Yuma County to be held in the office of the Board of Directors April 6, 1981; at 10:00 a.m., at which any interested citizen within the boundaries of the district may appear at the hearing and be heard on any matter relating to the reasonableness of the establishment of such zone.

BE IT FURTHERMORE RESOLVED that, this resolution be entered in the minutes of the Board of Directors of the Special Flood Control District of Yuma County and that the Clerk of the County be, and is hereby directed to publish notice of said hearing once a week for three consecutive weeks in a newspaper published in the County and of general circulation within the district and zones and shall be posted in not less than thirty public places within the zone. The post and the first date of publication, shall be not less than three weeks prior to the date of the hearing.

Pursuant to the resolution, a public hearing was held on April 6, 1981. None of the appellants attended that meeting. Following the hearing, the Board adopted a second resolution for the establishment of Zone 3 and the designation of its boundaries. The second resolution was virtually identical to the first resolution, except that it eliminated reference to the hearing and publication. Although the second resolution was dated April 6, 1981, it was not published until two years later, on April 18, 25 and May 2, 1983.

On June 3, 1983, appellants filed suit in Yuma County Superior Court, alleging that the assessments against their property were invalid for three reasons: (1) the Board failed to follow the statutory requirements for posting notice of the April

1981 meeting; (2) appellants were not benefitted by the bridge; and (3) notice of the zone project (bridge) was not properly given. Appellants sought modification of zone boundaries and refunds for assessments which they had paid under protest.[1]

On June 4, 1987, appellants filed a motion for summary judgment on the basis that appellees failed to follow the statutory requirements for levying the assessments. Appellees filed a cross motion for summary judgment alleging that any defects in authorizing and levying the assessments were merely procedural and therefore were not grounds for invalidating them. The trial court granted summary judgment in favor of appellees. The trial court acknowledged that the statutes in question are to be strictly construed and strictly applied against the assessing authority, and acknowledged that there were deviations from the statutory requirements. However, the court found that the challenged actions were "proper in both form and procedure." This appeal followed.

Appellants present five issues on appeal:
(1) What is the standard of review with respect to compliance with statutory provisions governing the levying of a special assessment?
(2) What is the standard of construction with respect to statutory provisions governing the levying of a special assessment?
(3) Does failure to adopt a resolution authorizing an assessment render the assessment invalid?
(4) Does establishing a zone and authorizing a project simultaneously invalidate a special assessment?
(5) Does failure to include engineering cost estimates in the authorizing resolution and notices invalidate a special assessment?

## STANDARD OF REVIEW: STRICT OR SUBSTANTIAL COMPLIANCE

██ Appellants argue that the applicable standard of review for determining the va-

---

1. The Board subsequently determined that appellants were not benefitted by the project and modified the boundaries of Zone 3 to exclude appellants; however, it appears that no refunds were given for the assessments paid under protest.

lidity of a special assessment is strict compliance, citing *Henningson, Durham & Richardson v. Prochnow*, 13 Ariz.App. 411, 477 P.2d 285 (1970). Specifically, appellants contend that the assessing authority must strictly comply with every statutory mandate designed to protect the landowner's property from sacrifice. Appellees counter by contending that *Henningson* is distinguishable because it involved a jurisdictional defect. They urge that in determining whether a special assessment is void and unenforceable, only substantial compliance with the statutes is required, citing 70A Am.Jur.2d *Special or Local Assessments* § 124. For the following reasons, we reject appellees' contention that substantial compliance is sufficient.

Arizona and other states have historically recognized the importance of requiring strict adherence to taxation statutes. *See, e.g., Arizona Tax Com'n v. Dairy & Consum. Cooperative Ass'n*, 70 Ariz. 7, 215 P.2d 235 (1950); *Butler v. City of Blackfoot*, 98 Idaho 854, 574 P.2d 542 (1978); *Turner v. North Platte*, 203 Neb. 706, 279 N.W.2d 868 (1979); *West Tennessee Flood Control and Soil Conservation Dist. v. Wyatt*, 193 Tenn. 566, 247 S.W.2d 56 (1952); *see generally*, W. Page & P. Jones, *Taxation by Assessment* § 234, at 360–361 (1909). This strict standard reflects a policy that taxpayers should be afforded every procedural protection provided by the legislature for their benefit. *See generally*, 70A Am.Jur.2d *Special or Local Assessments* § 124, at 1234.

This court specifically recognized a requirement of strict compliance in the context of statutes dealing with local assessments in *Henningson*, 13 Ariz.App. at 416, 477 P.2d at 290. In *Henningson*, we invalidated a special assessment on a jurisdictional ground for failure to provide an accurate estimate of the cost of the improvement at the time the resolution was adopted. We noted that the cost of the completed project becomes a lien on the land of property owners within the zone and the lands are subject to foreclosure for non-payment of assessments. *Id.* at 416, 477 P.2d at 290. We therefore concluded that there must be strict compliance with

all statutes governing improvement districts. The fact that an accurate cost estimate was found to be jurisdictional to authorization of the improvement in *Henningson* has no bearing on the applicability of this principle to the present case. Nevertheless, since there appears to be some confusion between the terms "strict" and "substantial" compliance and there are no Arizona cases directly on point which develop the standard for measuring compliance with statutes governing assessments, we believe it would be useful to do so at this time.

We begin by examining appellees' argument. Appellees contend that all that is required of the assessing authorities is "substantial" compliance with the statutes, and that this is achieved by providing notice and an opportunity to object. Appellees rely solely on the following excerpt from American Jurisprudence 2d:

> When express power of assessment is given to an assessing authority, substantial compliance with the statute is all that is required; mere insufficiency of description or other irregularity in a proceeding for a special assessment for a local improvement will not entitle abutting owners to have the assessment declared void....

70A Am.Jur.2d *Special or Local Assessments* § 124, at 1234.

Initially, we note that the cases cited in American Jurisprudence 2d for the proposition that substantial compliance is all that is required are both factually and substantively distinguishable from the present case. *See Chicago, R.I. & P.R. Co. v. Ottumwa*, 112 Iowa 300, 83 N.W. 1074 (1900) and *Hayes v. Douglas County*, 92 Wis. 429, 65 N.W. 482 (1895), *overruled on other grounds, Newton v. Superior*, 146 Wis. 308, 130 N.W. 242 (1911). In *Chicago*, the court upheld an assessment because the challenged procedural irregularity was "nothing more than a mistake in name" in notices otherwise issued in accordance with the applicable statutes. Significantly, there was a curative statute which specifically exempted errors in name from invalidating the assessments. The defects al-

leged in the present case are both individually and cumulatively more substantial than a mere mistake in name, and Arizona has no curative statute exempting such defects. In *Hayes,* there was also a charter provision disclaiming certain assessment procedures as merely directory; however, the court *invalidated* the challenged assessment based on a finding that the assessing authority failed to state that its method of apportionment was based on the benefits conferred to the assessed property owners. Therefore, these cases are not persuasive authority to disregard the defects alleged in the present case.

Additionally, we note that the excerpt relied on by appellees is preceded by the *caveat* that the assessed property owner has the right "to insist upon the observance of every form prescribed by statute which will in the least tend to protect him." 70A Am.Jur.2d § 124, at 1233–34. The excerpt is further qualified by a statement that statutory provisions concerning such matters as tax lists and the form of assessments must be complied with because they are for the benefit of the taxpayers and the protection of their property from sacrifice. *Id.* at 1234. Thus, when the paragraph from American Jurisprudence 2d is construed as a whole, it is clear that the discussion of "substantial" compliance refers only to minor irregularities in the adoption of a special assessment which do not affect any of the substantial procedural safeguards designed for the benefit of the assessed property owners. *See also* 14 McQuillin Mun. Corp. § 38.175, at 501 (3rd ed.1987) (nonobservance of mere directory provisions, slight irregularities, immaterial variances and minor departures from the letter of the requirement which are not injurious to assessed landowners are disregarded where there is substantial compliance); C. Rhyne, Municipal Law § 29.6, at 723 (1957) (all mandatory provisions of the enabling legislation must be strictly complied with or assessment will be void, however, minor irregularities as to provisions which are merely directory will not invalidate an assessment).

In summary, although courts addressing what irregularities constitute material, fatal defects have used the term "substantial compliance," this phrase is misleading to the extent it suggests that a good faith effort toward complying with a majority of the procedural prerequisites to levying an assessment is always sufficient to sustain it. We conclude and therefore hold that the proper standard for determining the validity of an assessment is whether there was strict compliance with every statutory provision which provides a substantive measure of protection to the property owner.

## STANDARD OF CONSTRUCTION

Next, appellants contend that the trial court erred by failing to construe the statute liberally in favor of the taxpayer and against the assessing authority. We agree. Appellees do not dispute the proposition that, as a general rule, such statutes are to be strictly construed and strictly applied against the assessing authority. Arizona courts have adopted a rule of strict construction with respect to general taxation statutes. *See, e.g., City of Phoenix v. Santa Anita Dev. Corp.,* 141 Ariz. 179, 182, 685 P.2d 1331, 1334 (App.1984). Other states have specifically recognized that statutes authorizing local assessments must be strictly construed. *See, e.g., Butler v. City of Blackfoot,* 98 Idaho 854, 574 P.2d 542 (1978). We conclude that the trial court was obligated to construe any ambiguity in the statutes strictly against appellees and liberally in favor of appellants.

## AUTHORIZING RESOLUTION

We now apply these standards to the three defects alleged in this case. First, appellants argue that the trial court erred by not invalidating the assessment based on appellees' failure to adopt a resolution authorizing the zone project and assessment as required by the statute. We agree.

A.R.S. § 45–2364.03(A) specifically required as a prerequisite to "acquiring authority to proceed with any project of special benefit to a zone" that "the board of directors shall adopt a resolution specifying

its intention to undertake such zone project." The resolution affords the landowner an opportunity to be heard on the necessity and wisdom of the proposed improvement, and therefore it is indispensable that it provide accurate information. *Henningson*, 13 Ariz.App. at 416, 477 P.2d at 290, quoting *Jones v. Barber Asphalt Paving Co.*, 174 Mo.App. 393, 396, 160 S.W. 276, 279 (1913).

In the present case, neither the March 3, 1981 resolution nor the April 6, 1981 resolution provided for anything more than the establishment of the proposed district zone. Appellants correctly point out that while the preamble to the resolution may contemplate the improvement and assessment, the operative, legislative portions of the resolution contain no authorization for either. Accordingly, the cumulative effect of omitting a specific resolution to undertake the project and combining the proceedings establishing the zone with those authorizing the project and assessment was to jeopardize appellants' rights to notice and a hearing on the merits of the bridge and the corresponding assessment. Since it was not readily apparent from the March 1981 resolution that the proposed bridge was being authorized, it was certainly not apparent that assessments for the cost of constructing the bridge would be the subject of the April 6, 1981 hearing. Thus, the resolution was potentially misleading and failed to provide adequate notice of the Board's intention to undertake the project.

### INTEGRATION OF PROCEEDINGS

■ Although we find that the omission of a specific resolution to undertake the zone project is dispositive in this case, we address the remaining two grounds argued by appellants since we find that they provide additional bases to invalidate the assessment. Appellants contend that assuming the project and assessment were properly authorized, the trial court should have invalidated the assessment because of appellees' failure to establish the zone prior to authorizing the project and levying the assessment. Appellees counter by arguing that the statutes contemplate that the establishment of a zone and authorization of a project of special benefit within the zone will be done at the same time because the purpose of carving out a zone within the district is to attempt to assess the cost of a special improvement against the property receiving the benefits.

A.R.S. § 45–2356.01 authorized the board of directors to divide a flood control district into two or more zones. To do so, the board was required to adopt a resolution of intention, fix a date for a hearing, publish a notice of the hearing, and entertain objections to the establishment of the zone. *Id.* A.R.S. § 45–2364.03 enabled the board of directors to authorize a project of special benefit to a particular zone, the costs of which could then be defrayed by a special assessment against the property within the zone. To do so, the board was also required to adopt a resolution of intention, fix a date for a hearing, publish a notice of the hearing, and entertain objections to the authorization of the project and the levying of the assessment.

We find nothing in either statute which would prohibit or preclude combining the two steps into one, and we are not persuaded that this is necessarily inappropriate. *See* 70A Am.Jur.2d *Special or Local Assessments* § 123, at 1232 (general practice is to integrate establishment of improvement district and authorization of special assessment). However, if these two phases are integrated, it should be absolutely clear in the resolution that this is being done. As previously discussed, in this case it was by no means clear from a reading of the March 1981 resolution that the two proceedings were being combined. Accordingly, appellants were not given adequate notice that the hearing set for April 6, 1981 was their opportunity to object to the proposed bridge and the corresponding assessment.

### ENGINEERING COST ESTIMATES

■ Finally, appellants argue that the trial court should have invalidated the assessments based on appellees' failure to include engineering cost estimates in the resolution. A.R.S. § 45–2364.03 required

as a further prerequisite to acquiring authority to proceed with the zone project that the resolution of intention be adopted "together with the engineering estimates of the cost thereof to be borne by any participating zones." Appellees admit that the resolution is lacking in form, but they contend that the substance of the statutory requirement for including cost estimates is present in the following recitals:

WHEREAS, said Board of Supervisors recommendation includes the conducting of hydrological and engineering studies, preparation of plans, specification, and cost estimate and the calling for bids to construct a river crossing of 10,000 cubic feet per second capacity at Avenue 64E and the Gila River, and,

WHEREAS, the State of Arizona with Arizona Laws 1980, Chapter 193 (S.B. 1163) and S.B. –983–915 provides a State of Arizona contribution of Six Hundred Fifty Six Thousand Two Hundred Fifty Dollars, ($656,250.00) and The Special Flood Control District Zone 3 will contribute Two Hundred Twenty Thousand Dollars ($220,000.00), by the levy and collection of taxes upon all the property real and personal in zone 3.

We disagree. The requirement that engineering cost estimates be included is clearly for the benefit and protection of the affected property owner. It enables the property owner to make an informed decision as to the wisdom of the proposed improvement, and provides him with a basis for possible objection. *See Henningson*, 13 Ariz.App. at 416, 477 P.2d at 290. Accordingly, the trial court was obligated to require strict adherence to this provision. Again, it was not readily apparent that engineering cost estimates were present in the resolution. We therefore conclude that the trial court erred in finding that although "the magic words 'engineering estimates of cost' did not appear in the document," the requirement was satisfied because "it is not clearly obvious that preliminary cost figures were absent."

For the foregoing reasons, we reverse the order granting summary judgment in favor of appellees and remand this matter to the trial court with directions to enter summary judgment in favor of appellants, invalidating the assessment.

BROOKS, P.J., and KLEINSCHMIDT, J., concur.