IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**HAROLD VANGILDER, ET AL.,**
*Plaintiffs/Appellees/Cross-Appellants,*

*v.*

**ARIZONA DEPARTMENT OF REVENUE,**
*Defendant/Appellee/Cross-Appellee,*

**PINAL COUNTY, ET AL.,**
*Defendants/Appellants/Cross-Appellees.*

No. CV-20-0040-PR
Filed March 8, 2022

Appeal from the Arizona Tax Court
The Honorable Christopher T. Whitten, Judge
No. TX2017-000663
**AFFIRMED**

Opinion of the Court of Appeals, Division One
248 Ariz. 254 (App. 2020)
**AFFIRMED IN PART; VACATED IN PART**

COUNSEL:

Timothy Sandefur (argued), Christina Sandefur, Scharf-Norton Center for Constitutional Litigation at the Goldwater Institute, Phoenix; and Paul J. Mooney, Mooney, Wright, Moore & Wilhoit, PLLC, Mesa, Attorneys for Harold Vangilder, Dan Neidig, and Arizona Restaurant Association

Mark Brnovich, Arizona Attorney General, Scot G. Teasdale (argued), Jerry A. Fries, Lisa A. Neuville, Assistant Attorneys General, Phoenix, Attorneys for Arizona Department of Revenue

Patrick Irvine (argued), Taylor Burgoon, Fennemore Craig, P.C., Phoenix, Attorneys for Pinal County and Pinal Regional Transportation Authority

Chris Keller, Chief Civil Deputy, Office of the Pinal County Attorney, Florence, Attorney for Pinal County

William J. Sims, Sims Mackin, Ltd., Phoenix, Attorney for Pinal Regional Transportation Authority

James G. Busby, Jr., Karen C. Stafford, The Cavanagh Law Firm, P.A., Phoenix, Attorneys for Amici Curiae Arizona Tax Research Association and Arizona Free Enterprise Club

Scott A. Holcomb, Vail C. Cloar, Dickinson Wright PLLC, Phoenix, Attorneys for Amicus Curiae Town of Queen Creek

Denis M. Fitzgibbons, Fitzgibbons Law Offices PLC, Casa Grande, Attorney for Amici Curiae City of Maricopa and City of Coolidge

Clifford L. Mattice, Florence Town Attorney's Office, Florence, Attorney for Amicus Curiae Town of Florence

---

JUSTICE KING authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICE BOLICK joined. JUSTICE MONTGOMERY, joined by JUSTICES LOPEZ and BEENE, concurred in part and dissented in part.

---

JUSTICE KING, opinion of the Court:

¶1 This case asks us to determine whether the Pinal County Regional Transportation Authority ("RTA") and the Pinal County Board of Supervisors ("Board") acted lawfully when they adopted Proposition 416,

a regional transportation plan, and Proposition 417, a transportation excise tax. We must also determine whether a two-tiered retail transaction privilege tax ("TPT") structure, whereby the first $10,000 of any single item is taxed at one rate and any amount in excess is taxed at a rate of zero percent, was lawfully adopted as part of a transportation excise tax in Pinal County.

¶2        After considering the resolution, ballot provision, and the publicity pamphlet circulated to voters, we hold that Pinal County complied with state law in adopting the transportation excise tax. However, we hold that Arizona law does not permit Pinal County to adopt a two-tiered retail transaction privilege tax on tangible personal property as part of a transportation excise tax. Therefore, Pinal County's two-tiered retail transaction privilege tax is invalid.

**BACKGROUND**

¶3        In 2015, the Board established the RTA to coordinate multi-jurisdictional transportation planning, improvements, and funding. State law authorizes the RTA to develop a plan for transportation projects and propose a transportation excise tax to fund those projects. A.R.S. §§ 48-5309, -5314. However, to implement any such county transportation excise tax, state law requires the tax first be "approved by the qualified electors voting at a countywide election." A.R.S. § 42-6106(A); *see also* § 48-5314(F).

¶4        In June 2017, the RTA adopted the Pinal County Regional Transportation Plan ("Plan"), which identified roadway and transportation projects to be developed over a twenty-year period. To fund the Plan, the RTA adopted a resolution ("Resolution"), which asked the Board to call a countywide special election on the Plan and "on the issue of levying a transportation excise tax at a rate equal to one-half percent (0.005%) [sic] of the gross income from the business activity upon every person engaging or continuing in the business of selling tangible personal property at retail" to fund the Plan. The Resolution described the tax rate upon retail sales as "a variable or modified rate," such that "when the gross income from the sale of a single item of tangible personal property exceeds ten thousand dollars ($10,000), the one-half percent (0.005%) [sic] tax rate shall apply to the first ten thousand dollars ($10,000), and above ten thousand dollars ($10,000), the measure of tax shall be a rate of zero percent (0%)."

Accordingly, the tax rate would apply only to the first $10,000 of a single item of tangible personal property, and any amount in excess would be taxed at a rate of zero percent.

¶5        Before any transportation excise tax election, a county board of supervisors is required to prepare, print, and distribute a publicity pamphlet containing detailed information about the tax and the transportation plan.   *See* § 48-5314(C).   To that end, the Board printed a publicity pamphlet for the November 7, 2017 special election, describing Proposition 416 (relating to the Plan) and Proposition 417 (relating to the transportation excise tax to fund the Plan).   In October 2017, the RTA "ratified, confirmed, approved and adopted [the publicity pamphlet] in the form presented."

¶6        The publicity pamphlet described the planned transportation projects and explained that the completion of those projects would depend on voters approving the transportation excise tax in Proposition 417.   The publicity pamphlet explained:

> If Proposition 417 is approved by the voters, the Transportation Excise Tax would . . . be assessed on the same business transactions that are subject to the State of Arizona transaction privilege (sales) tax, but at a rate equal to 10% of the State tax . . . . [T]he Transportation Excise Tax rate will generally be 0.5% or 1 cent on each $2 on State taxable items . . . .

The publicity pamphlet identified each of the business classifications subject to the TPT and detailed the rates at which a transportation excise tax would apply to each of those business classifications.   *See* A.R.S. §§ 42-5061 to -5076.

¶7        Under Arizona law, an excise tax is assessed on the privilege or right to engage in an occupation or business; it is paid by the business providing the service and is "not a tax upon the sale itself."   *Karbal v. Ariz. Dep't of Revenue*, 215 Ariz. 114, 116 ¶ 10 (App. 2007) (quoting *Ariz. Dep't of Revenue v. Mountain States Tel. & Tel. Co.*, 113 Ariz. 467, 468 (1976)).   A TPT is "an excise on the privilege or right to engage in particular businesses within the taxing jurisdiction."   *Id.* ¶ 9 (quoting *U.S. W. Commc'ns., Inc. v. City of Tucson*, 198 Ariz. 515, 523 ¶ 24 (App. 2000)).   Arizona's TPT covers

4

sixteen enumerated business classifications (e.g., retail, utilities, transient lodging, mining).    *See* §§ 42-5061 to -5076.

**¶8**        The retail classification within Arizona's TPT structure applies to "the business of selling tangible personal property at retail." § 42-5061(A).    With respect to this retail classification, the Board's publicity pamphlet explained that the "Transportation Excise Tax rate shall become a variable or modified rate such that when applied in any case when the gross income from the sale of a single item of tangible personal property exceeds $10,000, the 0.5% Transportation Excise Tax rate shall apply to the first $10,000, and above $10,000, the measure of the Transportation Excise Tax shall be a rate of 0.0%."

**¶9**        During the special election, voters were asked:

**PROPOSITION 417**
**(Relating to County Transportation Excise (Sales) Taxes)**

Do you favor the levy of a transportation excise (sales) tax including at a rate equal to one-half percent (0.5%) of the gross income from the business activity upon every person engaging or continuing in the business of selling tangible personal property at retail; provided that such rate shall become a variable or modified rate such that when applied in any case when the gross income from the sale of a single item of tangible personal property exceeds ten thousand dollars ($10,000), the one-half percent (0.5%) tax rate shall apply to the first ten thousand dollars ($10,000), and above ten thousand dollars ($10,000), the measure of tax shall be a rate of zero percent (0.0%), in Pinal County for twenty (20) years to provide funding for the transportation elements contained in the Pinal Regional Transportation Plan?

Do you favor the levy of a transaction privilege (sales) tax for regional transportation purposes, including at a variable or modified rate, in Pinal County?

YES          _____
NO           _____

A "YES" vote has the effect of imposing a transaction privilege (sales) tax in Pinal County, including at a variable or modified rate, for twenty (20) years to provide funding for the transportation projects contained in the Regional Transportation Plan.

A "NO" vote has the effect of rejecting the transaction privilege (sales) tax for transportation purposes in Pinal County.

Voters approved both the Plan set forth in Proposition 416 and the transportation excise tax set forth in Proposition 417. Harold Vangilder, Dan Neidig, and the Arizona Restaurant Association (collectively, "Vangilder") filed suit to enjoin the Arizona Department of Revenue ("ADOR"), Pinal County, and the RTA from collecting the tax. The trial court invalidated the tax and denied Vangilder's request for attorney fees. The court of appeals reversed in part, upholding the tax as valid and affirming the denial of Vangilder's request for fees.

¶10 We granted review to determine whether the Board and the RTA acted lawfully in adopting the transportation excise tax and whether the two-tiered retail TPT structure on tangible personal property in Proposition 417 is lawful. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

**DISCUSSION**

¶11 The interpretation and application of a voter-approved measure present questions of law we review de novo. *See City of Surprise v. Ariz. Corp. Comm'n*, 246 Ariz. 206, 210 ¶ 10 (2019); *Ariz. Citizens Clean Elections Comm'n v. Brain*, 234 Ariz. 322, 325 ¶ 11 (2014).

**I.**

¶12 Vangilder claims the Resolution is legally deficient because it described the transportation excise tax as applying *only* to retail sales, as the Resolution described a tax on "the gross income from the business activity upon every person engaging or continuing in the business of selling tangible personal property at retail." Therefore, Vangilder contends the ballot's description cannot be read to describe a tax applying to all TPT

classifications, and instead it applied solely to retail sales. Vangilder asserts that a tax on only one TPT classification is unlawful and thus this transportation excise tax is invalid.

¶13 By contrast, Pinal County argues the Resolution properly requested that the issue of levying a transportation excise tax be placed on the ballot, which is the only statutorily required language for a valid resolution. Additionally, Pinal County maintains that the publicity pamphlet explained how each TPT classification would be taxed. Lastly, Pinal County claims the word "including" on the ballot indicated to voters that there would be a transportation excise tax, and one facet of that tax would be the two-tiered retail TPT structure.

## A.

¶14 As a threshold matter, any Resolution-based procedural challenges brought after the election are waived. *See Tilson v. Mofford*, 153 Ariz. 468, 470 (1987) ("Indeed, we have held that the procedures leading up to an election cannot be questioned after the people have voted, but instead the procedures *must* be challenged before the election is held."). However, even if we were to entertain Vangilder's claims regarding the Resolution, the actions of the Board and the RTA were permissible.

¶15 Section 48-5314(A)(2) permits the RTA to "[r]equest by resolution certified to the county board of supervisors *that the issue of levying a transportation excise tax* pursuant to § 42-6106 be submitted to the qualified electors at a countywide special election or placed on the ballot at a countywide general election." (Emphasis added.) In this case, the RTA did just that. Section 48-5314(A)(2) does not require the RTA to specify or describe the details of the transportation excise tax that would later be placed on the ballot. *See State v. Burbey*, 243 Ariz. 145, 147 ¶ 7 (2017) ("To determine a statute's meaning, we look first to its text. When the text is clear and unambiguous, we apply the plain meaning and our inquiry ends." (internal citation omitted)). That the Board chose to include a partial description of the transportation excise tax does not invalidate the Resolution or the placement of the tax on the ballot.

¶16 Further, Vangilder's reliance on *Braden v. Yuma County Board of Supervisors*, 161 Ariz. 199 (App. 1989), and *Henningson, Durham & Richardson v. Prochnow*, 13 Ariz. App. 411 (1970), is misplaced. In those

cases, the purpose of the resolutions (prepared pursuant to other statutory schemes) was to provide notice to the public. *See Braden*, 161 Ariz. at 204 ("Since it was not readily apparent from the March 1981 resolution that the proposed bridge was being authorized, it was certainly not apparent that assessments for the cost of constructing the bridge would be the subject of the April 6, 1981 hearing. Thus, the resolution was potentially misleading and failed to provide adequate notice of the Board's intention to undertake the project."); *Henningson, Durham & Richardson*, 13 Ariz. App. at 416 ("The resolution affords him an opportunity to be heard on the subject of the necessity and wisdom of the proposed improvement, and therefore it is indispensable that he should have accurate information." (quoting *Jones v. Barber Asphalt Paving Co.*, 160 S.W. 276, 279 (Mo. Ct. App. 1913))).

¶17        In this case, the sole purpose of the Resolution was to request that the Board place a transportation excise tax on the ballot. *See* § 48-5314(A)(2) (specifying the RTA shall "[r]equest by resolution certified to the county board of supervisors that the issue of levying a transportation excise tax pursuant to § 42-6106 be" placed on the ballot). The publicity pamphlet, which was approved by the RTA and distributed to voters, provided the requisite notice. *See* § 48-5314(C)(3) (stating "the county board of supervisors shall prepare and print a publicity pamphlet concerning the ballot question," which shall contain detailed information about, among other things, "the rate of the transportation excise tax"). In this case, the publicity pamphlet sent to voters before the election (1) explained that the "Transportation Excise Tax" would "be assessed on the same business transactions that are subject to the State of Arizona transaction privilege (sales) tax"; and (2) identified each of the business classifications subject to the TPT, specifying the rate that would apply to each classification, including the two-tiered rate structure for retail sales. *See Jett v. City of Tucson*, 180 Ariz. 115, 119 (1994) (noting "publicity pamphlet" was prepared and distributed "to apprise the voters of the purpose and intent behind" the ballot measure).

¶18        Accordingly, no basis exists to conclude the Board and the RTA acted unlawfully with regard to the Resolution or the placement of the transportation excise tax on the ballot.

**B.**

**¶19** Further, we disagree with Vangilder's arguments regarding the ballot language. Vangilder claims the ballot described an excise tax on only retail sales, contrary to the requirements set forth in § 42-6106 and § 48-5314(A)(2) that transportation excise taxes apply to all TPT classifications, not just retail sales. Pinal County contends the ballot describes a tax applying to all TPT classifications but provides greater specificity with regard to its application to retail sales.

**¶20** A county "transportation excise tax" is a term precisely described in § 42-6106 that applies to all TPT classifications. *See* § 42-6106(A), (B)(1). Indeed, § 42-6106(B)(1) requires the transportation excise tax be levied on and collected from "each person engaging or continuing in the county in a business taxed under chapter 5, article 1 of this title," which are the business categories declared taxable by A.R.S. § 42-5010. Considering the ballot provision and the publicity pamphlet together, the transportation excise tax clearly applied to all TPT classifications.

**¶21** First, there is no question that the publicity pamphlet listed the tax rate for *each* of the TPT classifications in addition to the rate for retail sales, indicating that the transportation excise tax would apply to all classifications. Further, the ballot asked voters if they agreed to "the levy of a transportation excise (sales) tax *including*" a two-tiered tax on retail sales. (Emphasis added.) Vangilder argues that the word "including" limited the tax to only retail sales. The court of appeals, acknowledging the ballot could have been more precise, concluded that the term "including" indicated the tax applied to all TPT classifications, but it applied *differently* to the retail classification. *Vangilder v. Ariz. Dep't of Revenue*, 248 Ariz. 254, 261 ¶ 18 (App. 2020). In other words, "'including' modifies 'transportation excise (sales) tax,' and the remainder of the phrase describes the retail-sales component of a broader tax." *Id.*

**¶22** We agree with the court of appeals' construction. The term "including" is rendered meaningless if the tax applied to only retail sales. *See Ariz. Dep't of Revenue v. Action Marine, Inc.*, 218 Ariz. 141, 143 ¶ 10 (2008) ("We . . . avoid interpretations that render statutory provisions meaningless, unnecessary, or duplicative." (internal citation omitted));

9

*Adams v. Bolin*, 74 Ariz. 269, 276 (1952) (explaining when interpreting a provision, "each word, phrase, clause and sentence must be given meaning so that no part will be void, inert, redundant or trivial"). Moreover, the statutory definition of the term "including" is "not limited to," and it is "not a term of exclusion." A.R.S. § 1-215(14). It follows that the best reading of the ballot provision is that the transportation excise tax is applicable to all TPT classifications and includes a two-tiered tax rate for the retail classification.

## II.

**¶23** We next consider whether Arizona law permits Pinal County to adopt a two-tiered retail TPT structure on tangible personal property as part of a transportation excise tax on all TPT categories. Vangilder and ADOR argue that such a two-tiered tax rate is not permitted under Arizona law.[1] Pinal County argues the two-tiered tax rate is permissible as a "variable rate" or "modified rate" under § 42-6106(C), which provides that "[t]he department shall collect the [transportation excise] tax at a variable rate if the variable rate is specified in the ballot proposition," and "[t]he department shall collect the [transportation excise] tax at a modified rate if approved by a majority of the qualified electors voting."

**¶24** At the outset, we note it is a settled principle of law that as subdivisions of the state, counties and municipalities "have only such legislative powers as have been expressly, or by necessary implication, delegated to them by constitution or by the legislature. These powers will be strictly construed." *City of Phoenix v. Ariz. Sash, Door & Glass Co.*, 80 Ariz. 100, 102, *amended on reh'g*, 80 Ariz. 239 (1956) (internal citation omitted); *see also Associated Dairy Prods. Co. v. Page*, 68 Ariz. 393, 395 (1949) (explaining "[t]he boards of supervisors of the various counties of the state have only such powers as have been expressly or by necessary implication, delegated to them by the state legislature" in case involving county ordinance regulating milk and milk products); *Ponderosa Fire Dist. v. Coconino County*, 235 Ariz. 597, 599 ¶ 1, 602–03 ¶ 25 (App. 2014) (noting "the principle that counties, like cities, have no inherent powers" in case evaluating county's discretion to call performance bonds); *Transamerica Title Ins. Co. v. Cochise County*, 26 Ariz. App. 323, 326 (1976) (explaining

---

[1] Although the lawsuit named ADOR as a defendant, ADOR supported Vangilder's position that the tax is invalid on this basis.

"[t]he law-making powers of counties in Arizona are entirely derivative" in case involving county's regulation of division of land). "Implied powers do not exist independently of the grant of express powers and the only function of an implied power is to aid in carrying into effect a power expressly granted." *Associated Dairy Prods. Co.*, 68 Ariz. at 395.

¶25 Specifically in the area of taxation, this Court has explained the "power of taxation under the Constitution inheres in the sovereignty of the state and may be exercised only by the state Legislature." *Home Builders Ass'n of Cent. Ariz., Inc. v. Riddel*, 109 Ariz. 404, 406 (1973) (quoting *Home Owners' Loan Corp. v. City of Phoenix*, 51 Ariz. 455, 466 (1938)). Indeed, the Arizona Constitution provides that "[t]he law-making power shall have authority to provide for the levy and collection of . . . *excise*" and other types of taxes. Ariz. Const. art. 9, § 12 (emphasis added); *see also Riddel*, 109 Ariz. at 406 (concluding that "the term '[t]he law-making power'" in article 9, § 12 was not "intended to include legislative action by city and town councils"). Thus, the power of taxation may be exercised by a political subdivision of the state only where it has been "expressly delegated" to it. *See Ariz. Sash, Door & Glass Co.*, 80 Ariz. at 102–03; *see also Maricopa County v. S. Pac. Co.*, 63 Ariz. 342, 347 (1945) (stating that "certain fundamental principles" are that a county's "authority to levy a tax must be derived from a statutory grant of power," and "[t]he legislature is the source of the taxing power, and without a grant from it no taxes can be levied or collected").

¶26 When interpreting the authority of a political subdivision to levy a tax, such authority "must be made *clearly* to appear and doubts, if any, as to the power sought to be exercised must be resolved *against*" the political subdivision. *Ariz. Sash, Door & Glass Co.*, 80 Ariz. at 102–03 (emphasis added). Similarly, "the power to levy a tax is never implied, but must *directly and specifically* be granted." *S. Pac. Co.*, 63 Ariz. at 347 (emphasis added).

¶27 It is undisputed that § 42-6106(C) allows the collection of a transportation excise tax at a "modified rate" or at a "variable rate" if approved by the voters. The question here is whether the two-tiered retail TPT structure in Proposition 417 constitutes a "modified rate" or a "variable rate."

¶28 The legislature did not define "modified rate" or "variable rate," and therefore it is our role to interpret the meaning of these terms, which is

the central issue here. "Because it does not appear from the context that the drafters intended a special meaning, we are guided by the word's ordinary meaning." *City of Phoenix v. Orbitz Worldwide Inc.*, 247 Ariz. 234, 239 ¶ 14 (2019). Indeed, § 1-213 provides that "[w]ords and phrases shall be construed according to the common and approved use of the language." A.R.S. § 1-213.

¶29 The word "modify" means "[t]o change somewhat the form or qualities of." *Modify*, Webster's New International Dictionary, Unabridged (2d ed. 1949); *accord Modify*, Webster's Third New International Dictionary (3d ed. 1976) (defining "modify" as "to make minor changes in the form or structure of," "alter without transforming," "make a basic or important change in," and "change the form or properties of for a definite purpose"); *Modification*, Black's Law Dictionary (7th ed. 1999) (defining "modification" as "[a] change to something; an alteration"). Because "modify" means to change the form of something, the term "modified rate" as used in § 42-6106(C) would apply to a situation where a ballot proposition seeks to *change an existing* transportation excise tax rate. Here, however, Pinal County did not have an already-existing transportation excise tax that Proposition 417 sought to change; instead, Proposition 417 proposed a new excise tax. Accordingly, this two-tiered retail tax rate structure does not constitute a "modified rate" under § 42-6106(C).

¶30 Next, the term "variable" means "something subject to change," "able or apt to vary or change," and "susceptible or subject to variation or changes." *Variable*, Webster's Third New International Dictionary (3d ed. 1976). These definitions are broad. Significantly, however, each definition contemplates that the something "varied" starts out one way and then is subject to alteration. Applying that meaning here, a "variable rate" means an established rate that *itself* may change upon the occurrence of specified conditions. Indeed, this meaning is commonly applied in the context of interest rates. *See variable rate*, Black's Law Dictionary (7th ed. 1999) (defining "variable rate" as "[a]n interest rate that varies at preset intervals in relation to the current market rate (usu. the prime rate)"). Likewise, a "variable annuity" is one whose value changes over time. *See variable annuity*, Black's Law Dictionary (7th ed. 1999). As the dissent acknowledges, "tax law does not specify what constitutes a variable tax rate." *Infra* ¶ 59.

**¶31** Because "variable" means something subject to change, a "variable rate" in § 42-6106(C), as in the interest rate context, would be commonly understood to include a tax rate that varies over time. *See* § 1-213 ("Words and phrases shall be construed according to the common and approved use of the language"); *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 20 ¶ 13 (2018) (explaining when interpreting the meaning of a term, "we look to the term's ordinary meaning"). A variable rate might also include tax rates that vary among the different TPT classifications to meet a county's unique circumstances. *See* § 42-5010 (designating state tax rates that vary among TPT classifications). But in this case, Pinal County's two-tiered tax rate structure—which establishes a positive tax rate and a tax rate of zero percent—sets *fixed* tax rates that never vary and are never subject to change.

**¶32** The legislature could have used other terms that would have expressly delegated to counties the authority to establish two different fixed rates within a single TPT classification—for example, (1) "two-level tax structure," which is how the Model City Tax Code refers to this structure, *infra* ¶ 44, (2) "multiple rates," or (3) "two-tiered" tax rate. But the legislature did not use such express language in § 42-6106(C).

**¶33** The dissent cites cases from other jurisdictions that use the term "variable rate." *Infra* ¶ 59. But those cases are not instructive here because they do not conclude that a two-tiered tax rate structure, which applies a tax rate only up to a specified dollar amount, is a "variable rate." Nor do they address the absence of any delegation of taxation authority to a county or political subdivision, which must be expressly delegated under Arizona law. *See* Ariz. Const. art. 9, § 12; *Riddel*, 109 Ariz. at 406; *Ariz. Sash, Door & Glass Co.*, 80 Ariz. at 102–03.

**¶34** Other statutory provisions governing regional transportation plans and transportation excise taxes support a determination that the legislature did not expressly delegate to Pinal County the authority to adopt a two-tiered retail TPT structure as part of a transportation excise tax. *See Orbitz Worldwide*, 247 Ariz. at 238 ¶ 10 ("In construing a specific provision, we look to the statute as a whole and we may also consider statutes that are *in pari materia*—of the same subject or general purpose—for guidance and to give effect to all of the provisions involved." (quoting *Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017))).

**¶35** First, viewing § 42-6106 as a whole, it appears the legislature intended the county transportation excise tax to mirror the state tax in form. This is because § 42-6106(B)(1) — in creating the county transportation excise tax — expressly incorporates the state TPT structure by limiting the county transportation excise tax to "a rate that, by itself or together with any tax imposed pursuant § 42-6107, is not more than twenty percent of the [state] transaction privilege tax rate prescribed by § 42-5010, subsection A . . . to each person engaging or continuing in the county in a business taxed under chapter 5, article 1 of this title." Section 42-6106(B) incorporates both § 42-5010(A) (which outlines the tax rates for each of the sixteen TPT classifications in Arizona) and chapter 5, article 1 of Title 42 (which applies the state TPT to specific businesses). All the state TPT rates in § 42-5010 apply a *single rate* to each TPT classification. While rates vary among the different classifications, there are *no* two-tiered rate structures within a single TPT classification. *See* § 42-5010.[2] This additionally suggests the legislature intended a single combined rate (state plus county) applicable to all taxable revenue for a transportation excise tax under § 42-6106. Thus, the statutory scheme as a whole does not contemplate a two-tiered retail tax structure.

**¶36** The dissent notes that the TPT and transportation excise tax have different purposes: raising public monies and funding regional transportation plans, respectively. *Infra* ¶ 68. But even if they have different purposes, our point here is simply that the transportation excise tax law specifically and expressly incorporates the state TPT structure.

**¶37** Second, the legislature has made clear the TPT for the retail classification is a tax imposed on the gross receipts derived from business activity or gross proceeds of sales. *See* § 42-5061(A) ("The tax base for the retail classification is the gross proceeds of sales or gross income derived from the business."); A.R.S. § 42-5001(4), (5) (defining "Gross proceeds of sales" and "Gross income"); A.R.S. § 42-5008(A) (establishing the levy and

---

[2] Moreover, each statute that allows counties to apply a TPT requires them to follow the existing state-defined TPT classifications and take the tax base defined in the statute. *See, e.g.*, A.R.S. §§ 42-6103, -6105, -6106, -6107, -6108, -6108.01, -6109, -6109.01, -6111, -6112, -6113. Thus, when adopting a TPT, counties have the authority to adopt a rate to be combined with the state rate in a particular classification.

collection of "privilege taxes measured by the amount or volume of business transacted by persons on account of their business activities, and in the amounts to be determined by the application of rates against values, gross proceeds of sales or gross income"); *see also Tower Plaza Invs. Ltd. v. DeWitt*, 109 Ariz. 248, 250 (1973) ("The [transaction privilege] tax is not upon sales, as such, but upon the privilege or right to engage in business in the State, although measured by the gross volume of business activity conducted within the State."). The TPT is thus intended to be a tax levied on the gross volume of business activity—not a tax on individual sales that trigger different tax rates depending on whether a particular item exceeds $10,000. *See Rigel Corp. v. State*, 225 Ariz. 65, 67 ¶ 12 (App. 2010) ("[T]he transaction privilege tax is levied on gross receipts instead of individual sales . . . ."). Here, the two-tiered retail tax structure is not based on the gross volume of business activity because any retail amount above $10,000 is taxed at a rate of zero percent. These factors further support a legislative intent for a single combined rate (state plus county) to apply to all TPT taxable revenue, rather than a two-tiered retail tax structure.

¶38 Third, if "a rate of zero percent" is applied on amounts over $10,000 within a classification, this would effectively exempt part of the state's legislatively defined TPT tax base from a county tax. The legislature has created several statutory exemptions and deductions from the tax base within the TPT retail classification. *See* § 42-5061 ("Retail classification; definitions"). But Pinal County and the RTA do not cite any statute wherein the legislature adopted—or expressly authorized counties to adopt—a statutory exemption applying to gross income over a specified dollar amount for a single retail item. The legislature did not do so in either § 42-5061 or § 42-6106 ("County transportation excise tax"). Moreover, this Court has already made clear that "every interpretation shall be against exemptions from taxation statutes." *Ebasco Servs. Inc. v. Ariz. State Tax Comm'n*, 105 Ariz. 94, 99 (1969) (quoting *J. H. Welsh & Son Contracting Co. v. Ariz. State Tax Comm'n*, 4 Ariz. App. 398, 403 (1966)).

¶39 Pinal County, the RTA, and the dissent place great weight on the legislature's statement of "Legislative intent" for Senate Bill 1011 in 1990. *See* 1990 Ariz. Sess. Laws ch. 380, §§ 1, 11 (2nd Reg. Sess.). By way of background, Senate Bill 1011 did not simply grant certain counties the authority to levy a new transportation excise tax with a "variable rate"

under § 42-6106.[3]   Senate Bill 1011 was much broader in scope; it created a comprehensive new regional transportation funding system for certain counties.   In doing so, Senate Bill 1011 established a regional transportation authority, a regional transportation fund, regional transportation planning requirements, new methods to fund regional transportation, and prerequisites for the distribution of regional transportation fund monies, among other things.   1990 Ariz. Sess. Laws ch. 38, § 5 (2nd Reg. Sess.).

¶40       In the statement of legislative intent, the legislature recognized the need to create a new source of funding for certain counties, noting that (a) "[t]ransportation funding needs [were] unmet by any existing transportation-specific funding mechanisms within the area"; and (b) there were "constitutional limitations placed on the use of highway user revenues" and "other sources of funding must be utilized for transportation related purposes other than streets and highways."   1990 Ariz. Sess. Laws ch. 380, § 1 (2nd Reg. Sess.).   In creating this comprehensive regional transportation funding system, the legislature noted that "specific areas in this state possess unique characteristics and . . . the needs produced by these characteristics must be addressed by certain unique strategies."   *Id.*

¶41       Express statements of legislative intent can be helpful in construing legislative text.   But contrary to the dissent's implication, legislative intent does not itself establish or enlarge delegated legislative authority.   Delegations of legislative authority to municipal and county governments must be express.   *See* Ariz. Const. art. 9, § 12; *see also Riddel*, 109 Ariz. at 406.   Thus, the legislature here did not (and probably could not) delegate open-ended authority to enact whatever taxes a county concluded were necessary to meet its "unique" needs, nor to enact a particular tax so long as it was "unique."   Rather, as relevant here, the legislature delegated authority to establish a modified or variable rate. Thus, Pinal County's authority must be located within that express delegation, not within the legislature's broad statement of purpose.

---

[3] The legislature granted the authority to levy the transportation excise tax to counties with populations of more than four hundred thousand but fewer than one million two hundred thousand people.   1990 Ariz. Sess. Laws ch. 380, §§ 1, 5–6 (2nd Reg. Sess.).   Section 42-6106 was originally numbered A.R.S. § 42-1483 within Senate Bill 1011.

**¶42** Regardless, this statement of legislative intent does not support the validity of Pinal County's two-tiered retail TPT structure. First, the legislature did not indicate it was granting unrestricted authority to counties—instead, it explained that regional needs would be addressed by "*certain* unique strategies." 1990 Ariz. Sess. Laws ch. 380, § 1 (2nd Reg. Sess.) (emphasis added). Second, viewing the statement of legislative intent in its entirety and within the overall context of Senate Bill 1011, "certain unique strategies" was referring to the creation of a novel comprehensive regional transportation funding system and new authority to raise revenues for regional transportation needs via taxes and the issuance of bonds—an authority that had not been previously granted. *See BSI Holdings, LLC*, 244 Ariz. at 21 ¶ 19 ("We must not interpret terms in isolation, but rather in their overall context."). Indeed, the legislative intent language explained there had previously been a "lack of a transportation excise tax," and consequently "other sources of funding must be utilized for [regional] transportation related purposes." 1990 Ariz. Sess. Laws ch. 380, § 1 (2nd Reg. Sess.). Thus, the reference to "certain unique strategies" did not convey open-ended taxing authority, nor could it because a county's authority to tax must be expressly delegated under Arizona law. *See* Ariz. Const. art. 9, § 12; *see also Riddel*, 109 Ariz. at 406.

**¶43** The dissent asserts there are only two limitations to the authority of counties to levy a transportation excise tax. *Infra* ¶ 54. But our search is not for legislative limitations, but rather for legislative authority. Thus, our analysis is not focused on a far-reaching transportation excise tax that might have some limitations placed on its exercise. Instead, as previously noted, our analysis is focused on whether the power to impose a two-tiered retail TPT rate structure was "expressly delegated" to Pinal County by the legislature and "made clearly to appear" in § 42-6106(C). *Ariz. Sash, Door & Glass Co.*, 80 Ariz. at 102–03; *see also* Ariz. Const. art. 9, § 12.

**¶44** Pinal County and the RTA note that cities and towns, under the Model City Tax Code, may exempt proceeds from their retail tax. But this is irrelevant for several reasons. First, the Model City Tax Code only applies to a "city or town," not counties. *See* §§ 42-6051 to -6056. In addition, while the Model City Tax Code (under Local Option #V) indicates that cities may "[i]mpose a *two-level tax structure* on sales/purchases of 'big-ticket' items," *see Model City Tax Code*, Ariz. Dep't of Revenue (emphasis

added), https://modelcitytaxcode.az.gov/models/Appendix_III.htm (last visited March 3, 2022), the phrases "variable rate" or "modified rate" are not used.

**¶45**      Here, where the legislature permitted "the department [to] collect the tax at a variable rate" and at a "modified rate" as part of a transportation excise tax (§ 42-6106(C)), we must determine whether the legislature "expressly delegated" to Pinal County the authority to implement a two-tiered retail tax rate structure. *Ariz. Sash, Door & Glass Co.*, 80 Ariz. at 102–03; *Associated Dairy Prods. Co.*, 68 Ariz. at 394–95 (regarding the authority to enact an ordinance regulating milk, counties "have only such powers as have been expressly. . . delegated to them by the state legislature"). We conclude it did not. Pinal County's authority to levy such tax was not "made clearly to appear" in § 42-6106(C). *See Ariz. Sash, Door & Glass Co.*, 80 Ariz. at 102–03. In addition, we are guided by the principle that "doubts, if any, as to the power sought to be exercised must be resolved *against*" the political subdivision, whose authority to levy a tax is to "be strictly construed." *Id.* (emphasis added); *see also State v. Texas Indep. Oil Co.*, 95 Ariz. 216, 220 (1964) ("[D]oubtful tax statutes should be given a strict construction against the taxing power." (citation omitted)). We therefore conclude that the two-tiered retail TPT structure in Proposition 417 is neither a "modified rate" nor a "variable rate" under § 42-6106(C).[4] In this case, until the legislature "expressly delegates" to counties the authority to implement this tiered-rate tax on specified businesses—an authority that is "strictly construed"—Pinal County's two tiered retail TPT structure as part of a transportation excise tax is unlawful

---

[4] Although the Resolution, publicity pamphlet, and ballot language attempted to characterize the nature of the transportation excise tax on retail sales as a "variable or modified rate," this language "will not bind nor limit the Court's determination of its meaning." *Fann v. State*, 251 Ariz. 425, 434 ¶ 24 (2021) ("[I]t is the judiciary's exclusive power to state what the law is.").

and invalid.[5]    *See Ariz. Sash, Door & Glass Co.*, 80 Ariz. at 102–03.

## III.

**¶46**        The Town of Queen Creek, Town of Florence, City of Coolidge, and City of Maricopa filed an amicus brief asking that if the tax is found to be invalid, the ruling should be given effect on a prospective basis only. Pinal County and the RTA did not make this request for prospective relief. Because "[a]micus curiae will not be permitted to create, extend, or enlarge the issues" on appeal, we need not resolve amici's request for prospective relief. *City of Phoenix v. Phx. Civic Auditorium & Convention Ctr. Ass'n,* 99 Ariz. 270, 274 (1965).

## IV.

**¶47**        Vangilder states in his petition for review that pursuant to Arizona Rule of Civil Appellate Procedure 21(a), he "will seek fees" under the Private Attorney General Doctrine and A.R.S. § 12-348(B). "The private attorney general doctrine is an equitable rule which permits courts in their discretion to award attorney's fees . . . ." *Arnold v. Ariz. Dep't of Health Servs.*, 160 Ariz. 593, 609 (1989). An award of attorney fees under § 12-348(B) is also discretionary. A.R.S. § 12-348(B) ("[A] court *may* award fees and other expenses to any party." (emphasis added)). In the exercise of our discretion, we deny Vangilder's request for attorney fees.

## CONCLUSION

**¶48**        For the foregoing reasons, we conclude that Pinal County complied with state law in adopting the transportation excise tax. We further conclude, however, that state law does not permit Pinal County to adopt a two-tiered retail TPT structure as part of a transportation excise tax, whereby the first $10,000 of any single item is taxed at one rate and any

---

[5] At the court of appeals, Vangilder alleged the two-tiered tax rate for the TPT retail classification violated equal protection guarantees in the U.S. Constitution and Arizona Constitution, but Vangilder did not seek review of those constitutional issues in this Court. Because the two-tiered retail tax rate is otherwise invalid, we need not address those constitutional issues here.

amount in excess is taxed at a rate of zero percent.   For that reason, Pinal County's two-tiered retail TPT structure in Proposition 417 is unlawful and invalid.

**¶49**        Accordingly, we affirm the court of appeals' opinion in part and vacate in part.   We vacate paragraphs 2 and 23–30 of the court of appeals' opinion.   We affirm the superior court on other grounds.   We deny Vangilder's request for attorney fees.

VANGILDER, ET AL. V. PINAL COUNTY, ET AL.
JUSTICE MONTGOMERY, joined by JUSTICES LOPEZ and BEENE, Concurring in Part and Dissenting in Part

MONTGOMERY, J., joined by JUSTICES LOPEZ and BEENE, concurring in part and dissenting in part:

**¶50** We concur in the majority's analysis and disposition regarding the adoption of the regional transportation plan and the excise tax to fund it by the people of Pinal County, *see supra* ¶¶ 3–22, as well as the conclusion that the retail excise tax rate is not a modified rate, *see supra* ¶ 29. However, we part company with the majority's analysis and conclusion invalidating the transportation excise tax on retail sales. We would uphold the validity of the variable rate imposed on retail sales as a valid exercise of the express authority the legislature delegated to smaller counties, which renders the analysis at *supra* ¶¶ 46 and 47 unnecessary.

## I. Legislative Intent

**¶51** Unlike most legislation that comes before us, the legislature expressly set forth its intent when it passed Senate Bill 1011 with an emergency clause, [6] creating regional transportation authorities and delegating the authority to smaller counties to levy a county transportation excise tax:[7] "The legislature recognizes that specific areas in this state possess unique characteristics and that the needs produced by these characteristics must be addressed by certain unique strategies." 1990 Ariz. Sess. Laws, ch. 380, § 1 (2nd Reg. Sess.). Imposing the type of retail excise tax rate before us reflects just such a unique strategy to address transportation needs and the funding requirements unique to Pinal County that the RTA determined best suited its circumstances and that voters approved. If the legislature disapproves of the way the RTA exercised its

---

[6] Ordinarily, an act passed by the legislature does not become effective until ninety days after the legislature has adjourned. Ariz. Const. art. 4, pt. 1, § 1. An exception to this requirement is where the legislature specifies that the measure is necessary "to preserve the public peace, health, or safety" and passes with a two-thirds vote. *Id.*

[7] The legislation delegated the authority in question to counties with populations fewer than one million two hundred thousand persons but greater than four hundred thousand. 1990 Ariz. Sess. Laws, ch. 380, § 1 (2nd Reg. Sess.).

VANGILDER, ET AL. V. PINAL COUNTY, ET AL.
JUSTICE MONTGOMERY, joined by JUSTICES LOPEZ and BEENE, Concurring in
Part and Dissenting in Part

delegated authority, especially when the RTA's actions complied with express statutory requirements, then the legislature should address it. *See State v. Ariz. Mines Supply Co.*, 107 Ariz. 199, 205 (1971) (discussing nature and scope of legislature's delegation of authority).

## II. Delegation of Authority

**¶52** As a starting point, the majority correctly notes that "it is a settled principle of law that as subdivisions of the state, counties and municipalities 'have only such legislative powers as have been expressly, or by necessary implication, delegated to them by constitution or by the legislature.'" *Supra* ¶ 24 (quoting *Ariz. Sash, Door & Glass Co.*, 80 Ariz. at 102). It is equally true that delegated authority is "strictly construed." *Supra* ¶ 24; *Ariz. Sash, Door & Glass Co.*, 80 Ariz. at 102. But the statutes in question should not be construed so strictly as the majority does to reach its result. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 355–56 (2012) (cautioning against "strict construction" as opposed to "fair construction"). Instead, given the lack of any ambiguity in the statute's terms, we should apply § 42-6106 as written. *Glazer v. State*, 237 Ariz. 160, 163 ¶ 12 (2015) ("If the statute is subject to only one reasonable interpretation, we apply it without further analysis.").

**¶53** In this case, we have an express delegation of authority to smaller counties to levy a transportation excise tax and impose excise tax rates if they comply with specific statutory requirements. First, the legislature requires that the issue of whether to levy such a tax pursuant to § 42-6106 must be placed before the voters in a specified manner. *See* § 48-5314; *supra* ¶ 17. Pinal County complied with this requirement. *See supra* ¶ 18.

**¶54** Next, the legislature requires that "[i]f approved by the qualified electors voting at a countywide election, the regional transportation authority . . . shall levy and the department [of revenue] shall collect a transportation excise tax up to the rate authorized by this section." § 42-6106(A). The rate authorized by § 42-6106 has two express

VANGILDER, ET AL. V. PINAL COUNTY, ET AL.
JUSTICE MONTGOMERY, joined by JUSTICES LOPEZ and BEENE, Concurring in
Part and Dissenting in Part

limitations.    One, the rate cannot be "more than ten percent[8] of the transaction privilege tax rate prescribed by § 42-5010, subsection A." § 42-6106(B)(1) (2015).    Two, the rate must be imposed on "each person engaging or continuing in the county in a business taxed under chapter 5, article 1 of this title."    *Id.*    As specified in the ballot, the excise tax rate on retail sales comports with each element.    *See supra* ¶ 9.

¶55        Lastly, the legislature requires that "[t]he department [of revenue] shall collect the tax at a variable rate if the variable rate is specified in the ballot proposition."    § 42-6106(C).    The ballot proposition clearly specified a variable rate for retail sales with a rate of one-half percent (0.5%) on the sale of a single item of personal tangible property up to ten thousand dollars ($10,000) and then at a rate of zero percent (0%) above $10,000.[9]    *See supra* ¶ 9.

### III.    Validity of Retail Tax

¶56        The legislature has expressly and unambiguously granted Pinal County precisely the authority it relied upon to levy the tax and to set an excise tax rate on retail sales, and the county did not violate a single express statutory condition on the exercise of the delegated authority.    The retail sales excise tax rate is less than 10% of that prescribed by § 42-5010; is imposed on each person or entity as required; and is a voter-approved variable rate as properly set forth in the ballot proposition.    The retail sales excise rate is valid.

---

[8] The legislature increased this amount to twenty percent in 2019.    2019 Ariz. Sess. Laws ch. 50, § 1 (1st Reg. Sess.).

[9] Vangilder's argument that the authority to set "a" rate precludes the variable rate imposed is belied by the well-established statutory principle that a reference to the singular also includes the plural.    *See* A.R.S. § 1-214(B) ("Words in the singular number include the plural, and words in the plural number include the singular.").

VANGILDER, et al. v. PINAL COUNTY, et al.
JUSTICE MONTGOMERY, joined by JUSTICES LOPEZ and BEENE, Concurring in
Part and Dissenting in Part

## IV. Majority's Analysis

**¶57** The majority's analysis errs at the outset by resting on a cramped and inapplicable definition of "variable rate." *Supra* ¶¶ 30–31. This error is then compounded by the majority's insistence that the legislature must delegate with precision the specific rates that can be imposed within the delegated authority to impose a transportation excise tax beyond the specific guidance already provided. *Supra* ¶ 32. Lastly, the majority reads too much into the references in § 42-6106(B) and §42-5010(A) that provide guidance for determining the maximum excise rate and upon whom that rate may be imposed to conclude that Pinal County must impose an excise tax rate exactly like TPT rates. *Supra* ¶ 35. The majority thereafter employs the state's TPT structure like a straitjacket on Pinal County's efforts to levy a transportation excise tax. *Supra* ¶¶ 36–45. Mandating adherence to the TPT statutes directly thwarts the legislature's express intent to enable smaller counties to implement unique transportation excise tax strategies. *See* 1990 Ariz. Sess. Laws, ch. 380, § 1 (2nd Reg. Sess.). Ultimately, the analysis garbles the nature of the taxing authority delegated to smaller counties, imposes requirements on setting excise tax rates not supported by the applicable statutes, and overturns the statutorily compliant actions of the Pinal County electorate.

### A. Varying Definitions

**¶58** As noted, the first error in the majority's analysis lies with its definition of "variable" in the context of a variable tax rate. *Supra* ¶¶ 30–31. After accurately defining variable as "something subject to change," the majority inexplicably conflates the common meaning with acontextual definitions from Black's Law Dictionary that only pertain to financial markets in which *interest rates* vary over time and where one might purchase a variable annuity. *Supra* ¶¶ 30–31. There is no statutory basis for the proposition that the legislature intended to restrict a variable excise tax rate to the type of variable rate used in setting interest rates or anything akin to a variable annuity. *See Glazer*, 237 Ariz. at 164 ¶ 14 ("We give these terms their usual and commonly understood meanings *unless the legislature intended a different meaning*." (emphasis added)).

**¶59** While tax law does not specify what constitutes a variable tax rate, it likewise does not limit the basis for variance in tax rates to time and

VANGILDER, ET AL. V. PINAL COUNTY, ET AL.
JUSTICE MONTGOMERY, joined by JUSTICES LOPEZ and BEENE, Concurring in
Part and Dissenting in Part

there are plenty of examples demonstrating this fact. *See, e.g., LSCP, LLLP v. Kay-Decker*, 861 N.W.2d 846, 851 (Iowa 2015) (characterizing a tax that changed depending on the producer's geographic region was a "variable tax rate"); *City of Portland v. Cook*, 12 P.3d 70, 75 n.11 (Or. Ct. App. 2000) (a tax that changed based on a business's income was a variable tax rate); *Lawrence Baking Co. v. Mich. Unemployment Comp. Comm'n*, 13 N.W.2d 260, 265 (Mich. 1944) ("[E]mployer's contribution to the unemployment compensation fund [was] determined upon a variable tax rate based upon the employer's experience record . . . ."); *see also* James R. Storey & Jennifer A. Neisner, *Unemployment Compensation in the Group of Seven Nations: An International Comparison*, 19 Compar. Lab. L. & Pol'y J. 585, 590 (1998) (discussing countries with variable tax rates and the factors that determine the variable rates—wage level, job type, industry, and geography).

¶60　　　The majority further errs in negating the variable nature of the retail excise tax by dissecting it into two distinct tax rates, "a positive tax rate and a tax rate of zero percent," and then declaring that the two rates never vary or change. *Supra* ¶ 31. This is bizarre. Dissecting the majority's definition of a variable rate in the same way achieves the same result: an interest rate that varies from quarter to quarter is really just a fixed rate because the rate never changes or varies during the quarter in which the rate is in effect. This argument ignores the nature of change. While the conditions applicable to the imposition of any given tax or interest rate are present, of course there is no variance or change.

¶61　　　In the absence of any statutory language even suggesting that a variable excise tax rate should be treated like interest rates or variable annuities, there is no reason for us to impose such a restriction. Using the majority's own understanding that "a 'variable rate' means an established rate that *itself* may change upon the occurrence of specified conditions," *supra* ¶ 30, it is readily evident that the excise tax rate is valid. In this case, the RTA's transportation excise tax imposes a rate of 0.5% on gross income from the sale of tangible personal property up to $10,000. When the specified condition, the amount of the gross income from a sale of tangible personal property, exceeds $10,000, the tax rate changes—varies—to a 0% rate. The consequence of this needless restriction not commanded by the statute is evident: it leads directly to the majority invalidating a lawfully approved tax rate.

VANGILDER, ET AL. V. PINAL COUNTY, ET AL.
JUSTICE MONTGOMERY, joined by JUSTICES LOPEZ and BEENE, Concurring in
Part and Dissenting in Part

### B. Delegation of Authority

**¶62** The majority further compounds its error in defining variability by asserting that the legislature must specifically delegate the authority to impose a "two-tiered" rate as the majority has characterized it. *See supra* ¶ 2. This argument conflates a tax levy with a tax rate and confuses the authority the legislature must expressly delegate. It is the power of taxation, not the imposition of a specific tax rate, that must be expressly delegated. *Ariz. Sash, Door & Glass Co.*, 80 Ariz. at 102 (stating that "the power of taxation under the constitution inheres in the sovereignty of the state and may be exercised only by the legislature except where expressly delegated to political subdivisions of the state"); *see also Salt River Project Agric. Improvement & Power Dist. v. Apache County*, 172 Ariz. 337, 339–40 (1992) (discussing tax levy distinct from tax rate); *El Paso Nat. Gas Co. v. State*, 123 Ariz. 219, 221 (1979) (discussing separate functions of levying a tax and computing a tax rate).

**¶63** The legislature expressly delegated authority to levy a transportation excise tax in § 42-6106(A): "If approved by the qualified electors voting at a countywide election, the [RTA] *shall levy . . .* a transportation excise tax . . . ." (Emphasis added.) The authority to impose transportation excise tax rates is also expressly delegated: "[T]he [RTA] shall levy . . . a transportation excise tax *up to the rate authorized by this section . . . .*" *Id.* (emphasis added). The degree to which this authority may be exercised is expressly set forth in § 42-6106(B)(1)–(3) where the legislature directed that, subject to conditions discussed above, "[a] tax shall be levied and collected . . . *at a rate.*" (Emphasis added.) The legislature provided specific guidelines as to the maximum rate that can be imposed, against whom the rate must be imposed, and the way specific types of rates must be approved by voters. *See supra* ¶¶ 53–55; *see also Schecter v. Killingsworth*, 93 Ariz. 273, 285 (1963) (discussing features of a constitutional delegation of authority where statute "contains reasonably definite standards which govern the exercise of the power").

**¶64** The authority to impose specific rates within the limitations set forth at § 42-6106(B) exists by necessary implication. Without the implied authority to set specific rates, the expressly delegated authority to levy a transportation excise tax and set rates "up to the rate authorized" is a nullity. *See Associated Dairy Prods. Co.*, 68 Ariz. at 395 (stating that "the

VANGILDER, ET AL. V. PINAL COUNTY, ET AL.
JUSTICE MONTGOMERY, joined by JUSTICES LOPEZ and BEENE, Concurring in
Part and Dissenting in Part

only function of an implied power is to aid in carrying into effect a power expressly granted"). Thus, to the extent that the RTA imposes rates within these express statutory limitations, the RTA is lawfully exercising its delegated authority to set the rate in question. The majority's insistence that a specific rate must be specifically delegated has no authority to support it. Cases cited by the majority in its delegation analysis are confined to the grant of authority to levy a tax. They do not require the express delegation of authority to impose a tax rate. *See supra* ¶ 25.

**¶65** The majority's misreading of the nature of the taxing authority the legislature must expressly delegate and the incorrect definition of "variable rate" are the erroneous premises the majority relies on to prohibit and invalidate the retail rate as approved by Pinal County voters. *See supra* ¶ 35. While we must resolve doubts about the scope of delegated legislative authority against political subdivisions, that does not mean we may create such doubts where the taxing authority is expressly delegated and the delegee complies with every express statutory requirement. *See, e.g.*, *Ariz. Sash, Door & Glass Co.*, 80 Ariz. at 102.

## C. **Appearances and Mirrors**

**¶66** The majority discerns that "it appears the legislature intended the county transportation excise tax to mirror the state tax in form" and then concludes that the statute "expressly incorporates the state TPT structure" because § 42-6106(B)(1) references § 42-5010(A) and "chapter 5, article 1 of this title." *Supra* ¶ 35. This interpretive approach, while convenient, is wholly unsound. The text of § 42-6106 does not support this conclusion and the reliance on the related statutes canon in conjunction with discerning legislative intent is misplaced. *Supra* ¶¶ 34–35; Scalia & Garner, *supra,* at 252 (setting forth the related statutes canon and noting that "[t]hough it is often presented as effectuating the legislative 'intent,' the related-statute canon is not, to tell the truth, based upon a realistic assessment of what the legislature actually meant").

27

VANGILDER, ET AL. V. PINAL COUNTY, ET AL.
JUSTICE MONTGOMERY, joined by JUSTICES LOPEZ and BEENE, Concurring in
Part and Dissenting in Part

**¶67** Reading § 42-6106(B)(1) in its entirety places the two references in context:

> The tax shall be levied and collected:
>
>> 1. At a rate that, by itself or together with any tax imposed pursuant to § 42-6107, is not more than twenty percent of the transaction privilege tax rate prescribed by § 42-5010, subsection A in effect on January 1, 1990 to each person engaging or continuing in the county in a business taxed under chapter 5, article 1 of this title.

The first reference the majority relies on, § 42-5010(A), only pertains to limiting the maximum rate the RTA may impose, which may not be more than ten percent of the "rate prescribed by § 42-5010, subsection A." *Id.* The reference to "chapter 5, article 1 of this title" concerns the set of taxpayers to whom the excise tax applies. *Id.* Providing for a rate limit and defining the universe of taxpayers is the type of specific guidance the legislature offered for exercising the delegated taxing and rate setting authority. The statement of legislative intent makes absolutely no reference to the TPT and tying a transportation excise tax to the entire TPT structure contravenes the express legislative intent to permit "unique strategies." 1990 Ariz. Sess. Laws, ch. 380, § 1 (2nd Reg. Sess.).

### D. Different Taxes

**¶68** The majority's approach overlooks the significant difference in purpose for the respective taxes. The TPT is a general tax "on the privilege or right to engage in an occupation or business in the State of Arizona." *Carter Oil Co. v. Ariz. Dep't of Revenue*, 248 Ariz. 339, 342 ¶ 6 (App. 2020) (quoting *Mountain States Tel. & Tel. Co.*, 113 Ariz. at 468). And the general purpose is to raise public monies. § 42-5008(A). In contrast and as repeatedly noted, the regional transportation tax is unique to smaller counties with the specific purpose of funding regional transportation plans, the need for which the legislature viewed as justifying an emergency clause. *Supra* ¶ 51. Accordingly, while each statute addresses the general subject of taxation, we should not read § 42-5010, implementing a general tax,

28

VANGILDER, ET AL. V. PINAL COUNTY, ET AL.
JUSTICE MONTGOMERY, joined by JUSTICES LOPEZ and BEENE, Concurring in
Part and Dissenting in Part

together with § 42-6106, which implements a specific county transportation excise tax. *See Pima County v. Heinfeld*, 134 Ariz. 133, 134 (1982) ("Another well established rule of statutory construction dictates that where two statutes deal with the same subject, the more specific statute controls."). Respecting the differences between the statutes also avoids the problems that follow from trying to make transportation retail excise tax rates look like TPT rates, though it does make it easier to reject the retail excise tax rate because it does not mirror the TPT rate structure.

**¶69** The majority emphasizes that the TPT does not utilize a "two-tiered" rate for any of the TPT classifications. *Supra* ¶ 35. But this does not prohibit the RTA from imposing such a retail excise rate. The absence of a two-tiered tax rate among the TPT classifications has no bearing on the legislature's intent to address the uniqueness of the smaller counties' circumstances and to allow flexibility in the funding of regional transportation plans.

**¶70** The majority also argues that the legislature could have used language as set forth in the Model City Tax Code to expressly authorize the variable retail rate used here. *Supra* ¶ 32. But the regional transportation framework was passed in 1990, while the Model City Tax Code was passed in 1997. 1997 Ariz. Sess. Laws ch. 150, § 144 (1st Reg. Sess.). The fact that the legislature seven years later authorized a particular two-tier tax structure for cities and towns does not support the conclusion that a previous legislature necessarily precluded the RTA from imposing a similar rate pursuant to § 42-6106. Relying on the actions of a subsequent legislature to determine previous legislative intent is daunting enough when considering the same statute, but it is an exercise in rank speculation when evaluating different statutes with different purposes. *See, e.g., San Carlos Apache Tribe v. Superior Court*, 193 Ariz. 195, 209 (1999) (considering the effect of a later amendment of the same statute and stating that "to suggest that the 1995 Legislature knows and can clarify what the 1919 or 1974 Legislatures intended carries us past the boundary of reality and into the world of speculation").

**¶71** The majority next asserts that the imposition of a retail excise tax rate must be based on the gross proceeds of sales. *Supra* ¶ 37. While this is certainly consistent with the claim that a transportation excise tax must "mirror" a TPT tax, this reads too much into § 42-6106. We should "not

29

VANGILDER, ET AL. V. PINAL COUNTY, ET AL.
JUSTICE MONTGOMERY, joined by JUSTICES LOPEZ and BEENE, Concurring in
Part and Dissenting in Part

read into a statute something that is not within the manifest intent of the Legislature as gathered from the statute itself." *Collins v. Stockwell*, 137 Ariz. 416, 420 (1983). Once again, § 42-6106(B) only refers to the rate imposed in § 42-5010(A) and directs the imposition of the levy "to each person engaging or continuing in the county in a business taxed under chapter 5, article 1 of this title." Thus, while the calculation of rates imposed in § 42-5010(A) references the particular tax base of each covered business, the legislature did not prescribe a similar requirement for calculating excise rates in § 42-6106. What the majority shoehorns into § 42-6106 displaces the legislature's clear intent to give smaller counties the necessary flexibility to develop unique strategies to fund regional transportation plans.

**¶72** Lastly, the majority's effort to equate the RTA's imposition of a zero percent rate on amounts in excess of $10,000 as an exemption, *supra* ¶ 38, further reflects confusion between the levying of a tax and the imposition of a tax rate. Items and entities may be exempted from the levying of a tax. *See* Ariz. Const. art. 9, § 2 (providing that "[t]here shall be *exempt from taxation*" certain types of property (emphasis added)); A.R.S. § 42-6012 (requiring municipalities to either "*tax or exempt* in whole the gross proceeds of sales or gross income from sales by those businesses" listed therein (emphasis added)); A.R.S. § 42-5102 (providing that "the taxes imposed by this chapter *do not apply* to the gross proceeds of sales or gross income from sales of food" by listed businesses (emphasis added)); *see also* A.R.S. §§ 42-11101 to -11133. In contrast, the RTA levies a retail excise tax on every specified retail transaction. No sale is exempted. For each sale, the RTA imposes a tax rate of 0.5% for every applicable retail sale on amounts at or below $10,000. That the rate varies from one-half to zero percent for amounts exceeding $10,000 does not exempt retail sales from the tax levy.

**¶73** The TPT statutes are instructive because the legislature likewise does not exempt commercial leases from the TPT levy but instead imposes a rate of zero percent "for the business of every person engaging or continuing in this state in the commercial lease classification" as described in statute. § 42-5010(A)(4). Thus, in each case there is no exemption from the levy of a tax—even less so with respect to the RTA—rather a zero percent rate is imposed at a certain amount in the levy of the retail sales

VANGILDER, ET AL. V. PINAL COUNTY, ET AL.
JUSTICE MONTGOMERY, joined by JUSTICES LOPEZ and BEENE, Concurring in
Part and Dissenting in Part

excise tax. Characterizing a zero percent rate as an exemption is incorrect and injects needless confusion.

## V. Conclusion

**¶74** Because the Pinal County Regional Transportation Authority and the Pinal County Board of Supervisors properly authorized and presented a regional transportation plan and a transportation excise tax, which Pinal County voters approved, all pursuant to a valid exercise of authority delegated by the legislature, we conclude that the retail excise tax is a valid tax with a variable rate.